## IRA R. HARVEY
### *v.*
## WILLIAM R. HAMILTON.

*Filed at Ottawa April 1, 1895.*

1. BROKERS—*construction of contract as to commissions.* An agreement by a land owner to lease his building (a manufacturing property) at a certain rental, with the privilege of buying at a specified price, and to allow a broker, as commission "for said location," a certain interest in lands, does not require the broker to locate a factory *permanently* upon the premises to entitle him to his commission.

2. INSTRUCTIONS—*submission of question of law is erroneous.* An instruction that if the jury believe, from all the evidence given in the case, that the plaintiff is entitled to recover against the defendant, they should act in a certain manner, is erroneous, as submitting a question of law.

*Harvey* v. *Hamilton,* 54 Ill. App. 507, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. SAMUEL P. McCONNELL, Judge, presiding.

This case originated and was tried in the circuit court of Cook county. On appeal to the Appellate Court the following opinion by SHEPARD, P. J., was rendered:

"Suit was brought by the appellee, Hamilton, against the appellant, Harvey, for damages for the breach of the following contract:

" 'CHICAGO, ILL., *November 17, 1885.*

" '*Mr. W. R. Hamilton:*

" 'DEAR SIR—I hereby agree to lease my building at Pacific Junction, known as the Rotary Plow Factory Company, at $100 per month for the first year, or the privilege hereafter of buying, if they choose, at $10,000, or if building should not be suitable, will donate 200 ft. square feet along railroad for company to build on. Will allow you as commission for said location one-third interest in five acres located near said works.

I. R. HARVEY.'

"Acting under the agreement above quoted, Hamilton, with the approval of Harvey, procured certain persons doing business under the style of the 'Maxwell Patent White Lead Company,' to take a lease of the factory, by a lease dated December 18, 1885, for a term of two years, from January 1, 1886, to December 31, 1887, at a rental of $1000 for the first year and $1200 for the second year, with the privilege of a renewal of the lease for an additional term of three years. The Maxwell company entered into possession under the lease on January 1, 1886, and remained and carried on a manufacturing business there for five years with indifferent success and then removed. Having, in the manner indicated, secured a tenant, who was accepted as such by the appellant, the appellee demanded a conveyance to him of the one-third of five acres of land promised as a commission for so doing. A conveyance being refused, this suit for damages was begun, and from a judgment entered upon a verdict for $4899, in favor of appellee, this appeal is prosecuted.

"The appellant contends that the 'location' for which the commission was agreed to be paid, referred, not to the renting of the factory, but to a permanent location at the place indicated, either by the purchase of the factory that was leased, or by building upon the land offered to be donated for that purpose. We do not concur in

that contention. It appears from the evidence that the parties had in mind, when the proposition was made, the securing of the Maxwell company as a tenant and optional purchaser. The appellant was the owner of a considerable amount of unoccupied land in the suburb to Chicago known as Pacific Junction, as well as being the owner, in equity, at least, of the vacant building called the Plow Factory. That he was disappointed in the results he hoped would follow, in the way of selling lots out of his property, from the 'location' of the Maxwell company's manufacturing business at that point, furnishes no legal excuse for not complying with his contract with the appellee. It was simply his misfortune if no beneficial results flowed from the location of that business there. Courts can not make contracts for parties, but may only construe and enforce them.

"The proposition relates to the accomplishment of either one of the three results, viz., a lease of the plow factory building, a privilege to buy it, or arrangements whereby a new building should be erected upon land to be donated. The whole instrument, construed together, we think, most clearly requires the word 'location,' as therein used, to apply to either one of the results which the parties contemplated producing, and that a 'location' was secured when an accepted lessee of the factory was procured for Harvey by Hamilton. Such being the case, both law and justice concur in requiring Harvey to pay Hamilton whatever damages resulted to the latter from the refusal of the former to abide by his contract, and had no error of law been committed on the trial of the cause, the judgment would be affirmed.

"It is apparent that a very considerable proportion of the amount of the judgment is made up by the allowance of interest on the value of the property refused to be conveyed to Hamilton, from the alleged date of the breach of contract to convey. The court instructed the jury, 'that the jury should ascertain the amount of such

damages at the time of the breach of contract, and add thereto the interest upon such amount from the time of such breach of contract down to the date of the verdict.' A recovery of interest in this State can not be sustained unless authorized by our statutes. If not authorized by the statute it can not be recovered. (*Railroad Co.* v. *Cobb*, 72 Ill. 148; *Cooper* v. *Johnson*, 27 Ill. App. 504.) It is unnecessary to quote the statute relating to interest, but is sufficient to say that it does not authorize the recovery of interest on liquidated damages for a failure to turn out property. The demand here is neither for money due or to become due on any instrument in writing, for money lent or advanced or due on account stated, or had and received and retained, or withheld vexatiously. Under the authorities it is sometimes a matter of much difficulty to determine when the damages are unliquidated, to the extent of forbidding a recovery of interest, but it is safe to say that, in Illinois, interest is not allowable on unliquidated demands, in any case, where the amount of damages is not ascertainable by simple computation or by reference to generally recognized standards, such as market prices. Such a rule was commented upon by the New York Court of Appeals in the case of *McMahon* v. *N. Y. & E. R. R. Co.* 20 N. Y. 463, where it was said: 'The old common law rule which required that a demand should be liquidated, or its amount in some way ascertained, before interest could be allowed, has been modified, by general consent, so far as to hold that if the amount is capable of being ascertained by mere computation, then it shall carry interest; and this court, in the case of *Van Rensselaer* v. *Jewett*, went a step further and allowed interest upon an unliquidated demand the amount of which could be ascertained by computation, together with a reference to well established market values, because such values, in many cases, are so nearly certain that it would be possible for the debtor to obtain some approximate knowledge of how much

he was to pay. That case went, I think, so far as it is reasonable and proper to go in that direction. So long as the courts adhere even to the principles of that case, they are not without a rule which it is possible to apply. The rule itself is definite, and the only uncertainty it introduces is that which necessarily attends the settling of market rates and prices.'

"Cases where interest has been allowed in actions of trover, and upon breaches of covenants of warranty, and for breaches of contracts to convey land, where the consideration has been paid, are inapplicable to the facts of this case. Here there was an agreement to convey an undivided one-third interest in some land, so indefinite in description as to render the contract incapable of specific performance. (*Hamilton* v. *Harvey*, 121 Ill. 469.) There was no specific property to which the appellee could lay claim, and hence its value in money was not known, and there was no way in which the appellant could, before verdict, know, even approximately, how much he was liable for to the appellee.

"That the rule heretofore adverted to, of permitting interest upon damages ascertainable by computation or from well established market prices, can not be applied in this case, is made very plain from the testimony of witnesses on the trial, who ranged in opinion over $150 per lot previous to the time the lease to the Maxwell company was made, to $400 per lot 'when the location was decided upon,' which was before the alleged breach occurred, and the value per lot found by the jury at $213 per lot, as stated in the brief for appellee. With such a range in estimated values it surely may not be said that there was at the time of the breach a well established market price, from which, without the verdict of a jury, appellant could know how much he would have to pay or was liable for.

"The fourth instruction was likewise erroneous for the same reason, and for the further reason that it sub-

mitted to the jury a question of law, as follows : 'And if they further believe, from all the evidence given in the case, that the plaintiff is entitled to recover against the defendant, then,' etc. But, inasmuch as the appellant could not have been prejudiced thereby, for the reason that it added something more to be found against him before a verdict unfavorable to him could have been given by the jury, we are not inclined to place much stress upon it.

"With, therefore, the instruction regarding the allowance of interest constituting such a substantial error as in our opinion demands a reversal of the judgment and a remanding of the cause, it will be so ordered, unless the appellee shall, within ten days, remit in this court from the judgment down to the sum of $2505.20, and if such a *remittitur* be entered we will affirm the judgment for that amount. We are prompted to this course in order that the parties may come to an end of their litigation, which has now, in one form or another, been pending for more than seven years over this contract, and because we believe that thereby substantial justice will be done. The amount of $2505.20 is arrived at by us in adopting the figures shown on page 7 of appellant's brief, as constituting the average of the valuations placed upon the property by the parties themselves."

B. W. ELLIS, and JAMES FRAKE, for appellant.

PECK, MILLER & STARR, for appellee.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

The required *remittitur* having been entered by appellee, the judgment of the circuit court was affirmed, and appellant appeals.

The correctness of the decision of the Appellate Court on the question of interest is not controverted here.

We think the terms of the contract sued on, as to performance by the plaintiff, were correctly interpreted by that court, as stated in its opinion.   The position of counsel for appellant, that by "its proper construction the appellee must locate permanently upon the premises a manufactory," etc., to entitle him to his commission, is wholly untenable.   Just what is meant by a *"permanent location of a manufactory,"* is not explained.   Certainly it cannot be seriously contended that appellee was required by the contract to locate a factory on the premises and guarantee it to remain there in operation indefinitely. Such a construction would defeat his right of recovery altogether, because whether it would so remain and continue in operation could not be known.

The objection that the evidence failed to sustain the allegations of the first and second counts of the declaration is disposed of by the foregoing construction of the contract.

The objection to the fourth of plaintiff's instructions is properly disposed of in the opinion of the Appellate Court.

It is insisted the fifth and sixth of the same series are erroneous,—the fifth because it ignores the question of fraud entirely, and the sixth because it ignores "the misrepresentations made in regard to the company itself." Whether these instructions are entirely accurate or not, it is clear that, considering all the instructions given on that subject, the jury could not have been misled to the prejudice of the defendant.

We think the decision of the Appellate Court disposes of the case on its merits, and we concur in its opinion.   Its judgment will be affirmed.

*Judgment affirmed.*