## Robert Dady

*v.*

## James M. Condit.

*Opinion filed April 20, 1904—Rehearing denied June 8, 1904.*

1. Evidence—*what competent on question of damages for breach of a contract to convey.* Proof of the fair cash market value of land for subdivision and building lots, under the particular conditions existing at the time of the breach of a contract to convey the same, is competent in an action for breach of contract, notwithstanding the land, in its condition as farm property, is worth much less.

2. Same—*what evidence as to damages is not speculative or remote.* If the expectation of changed conditions in the neighborhood had actually enhanced the market value of land at the time of the breach of a contract to convey the same, such fact may be shown upon the question of damages in an action for breach of the contract, notwithstanding such changes did not, in fact, take place.

3. Same—*competency of proof of sales in vicinity.* In an action for breach of a contract to convey, evidence as to sales of similar property in the neighborhood is competent upon the question of damages, even though they are not all cash sales; but the defendant is entitled, on cross-examination, to bring out any facts connected with such sales which would affect the weight of the evidence.

4. Same—*what does not tend to show that sales failed.* That the purchasers at some sales of property of a similar character of that in question did not pay all cash, and that after several years the vendors disposed of their mortgages for the deferred payments at a discount, does not show that the sales failed, although such fact may be shown as tending to minimize the value of the evidence of such sales.

5. Damages—*measure of damages in action for breach of contract to convey.* The measure of damages in an action for breach of a contract to convey land is the increased fair cash market value of the land over the contract price on the day of the breach, whether the conditions causing such increased value were permanent or not.

6. Same—*effect of supposed adaptability of land for particular purpose.* If, by reason of the supposed adaptability of land for a particular purpose, the land commands a higher price in open market than it otherwise would, such greater value is to be considered when estimating the damages for breach of a contract to convey.

7. Same—*rule as to fair cash market value of land.* The value of land at the time of the breach of a contract to convey is its fair cash value if sold on open market under ordinary circumstances or circumstances then existing, for cash, and not on time, assuming that the owner is willing to sell and the purchaser willing to buy.

8. INTEREST—*when plaintiff in action for breach of contract is not entitled to interest.* Plaintiff in an action for breach of contract is not entitled to interest on the amount allowed as damages from the time of the breach, where the damages are not so certain that the defendant could, without a trial, know how much he owed.

*Dady* v. *Condit,* 104 Ill. App. 507, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Lake county; the Hon. CHARLES E. FULLER, Judge, presiding.

This suit has been submitted to this court before for review. Its history can be obtained from an examination of 163 Ill. 511, affirming the judgment of the Appellate Court reported in 56 Ill. App. 545, and the further opinion of this court reported in 188 Ill. 234, reversing the judgment of the Appellate Court reported in 87 Ill. App. 250.

The controversy out of which the present suit arose, as well as the other prolonged litigation between the same parties, relates to a certain written contract between them, entered into at Milwaukee, January 14, 1891, wherein appellant agreed to sell to appellee a quarter section of land at $150 per acre, located near the city of Waukegan. Appellee paid nothing down, but was to have paid $500 upon the delivery of an abstract, and in case he paid $3000 more on or before August 1, 1891, and gave a mortgage securing the balance of the purchase money, he was to be entitled to a deed. The contract is set out in full in the opinion of this court in 163 Ill. 511. Appellee made a tender of performance of the various preliminaries required of him by said contract, but appellant failed and refused to carry out his part of the said contract, so on the 10th of August, 1891, Condit commenced suit against Dady, appellant, in the circuit court of Lake county, for damages for breach of the contract. On the 23d of April, 1893, Dady filed his bill in equity in the same court against Condit, to set aside the said con-

tract on the grounds of fraud and want of delivery, and
to enjoin the suit at law. A temporary injunction was
issued enjoining the suit at law. On the hearing of the
chancery suit the circuit court found in favor of Condit
on the ground of fraud but in favor of Dady on the ground
of want of delivery, entering a decree setting aside the
contract as null and void and perpetually enjoining suit
upon it. On appeal to the Appellate Court the decree of
the circuit court was reversed, with directions that the
injunction be dissolved and that said bill be dismissed
for want of equity. From that judgment Dady took an
appeal to this court, where the judgment of the Appel-
late Court was affirmed. Thereupon the case was again
re-docketed in the circuit court, but the suit was after-
wards dismissed by Condit, who, on November 22, 1897,
brought the present suit. This suit has been tried three
times. On the first trial the plaintiff obtained a verdict
for $4920, which amount being unsatisfactory to him, he
requested, and was granted, a new trial. On the second
trial the plaintiff secured a verdict for $15,000, but, under
compulsion, remitted $3000, and judgment was given for
$12,000. From this judgment the defendant took an ap-
peal to the Appellate Court, where said judgment was
affirmed, but on further appeal to this court was reversed.
On the third trial plaintiff obtained a verdict for $16,000,
for which amount judgment was entered, but the defend-
ant took an appeal to the Appellate Court, where, on the
ground that the verdict was excessive, the plaintiff was
required to remit half of his judgment or submit to a re-
versal of the case. A *remittitur* for the amount indicated
having been filed, the judgment for $8000 was affirmed,
from which defendant prosecutes this further appeal.

The principal grounds urged for a reversal relate to
the competency of certain evidence and the correctness
of certain instructions. The only question before the
jury in this case was the amount of substantial damages
due appellee, nominal damages being admitted.

EDDY, HALEY & WETTEN, (CLYDE A. MORRISON, of counsel,) for appellant.

HOYNE, O'CONNOR & HOYNE, (JOHN L. GRIFFITH, and ELAM L. CLARKE, of counsel,) for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

Appellant first insists that there was error in the trial of this case by "allowing incompetent evidence to be introduced by the appellee as to the value of the land for speculative purposes and future uses under altered conditions, which might or might not arise." We have examined the evidence referred to, and, under the circumstances of this case, are of the opinion that its admission was proper. The land in question was in the vicinity of Waukegan. At the time of the execution of the contract out of which this litigation arises, and for several years thereafter and until the depression of 1893, Waukegan and the surrounding district was experiencing a boom occasioned by rumors that the Washburn & Moen Manufacturing Company, and other concerns, were about to establish factories there, and the above mentioned factory, and many others, were, in fact, so established, and as a result the population of Waukegan was greatly increased, and from the early part of 1891 until the panic of 1893 there was great activity in the sale of real estate in said district. As a result of these conditions the evidence clearly shows there was a great demand for land adjacent to and surrounding Waukegan for subdivision and lot purposes, and the cash market value of said lands was greatly enhanced in price. The lands in question here were farm lands, and for such use, it is contended, were worth but about $50 or $60 per acre, but numerous witnesses offered by appellee testified that by reason of the existence of the conditions above mentioned the lands in question, on August 1, 1891, had a fair cash market value of from $300 to $500 per acre. The

plaintiff had a right to show that at the time of the breach of the contract the lands had a cash market value for subdivision purposes, and numerous witnesses testified to this fact. The evidence of these witnesses was supplemented by an actual view of the premises by the jury. The testimony of numerous witnesses for appellee was to the effect that by reason of the developments at that time taking place and expected to take place in Waukegan, there was a greatly increased demand for all property in that vicinity. This testimony was proper for the purpose of showing the cash market value of the land in question on August 1, 1891. *South Park Comrs.* v. *Dunlevy*, 91 Ill. 49.

Counsel for appellant seem, however, to insist that this testimony related solely to speculative and prospective valuation and of an imaginative character, which has never, in fact, materialized, and was therefore incompetent. Appellant relies upon that class of cases which hold that in estimating the value of lands, remote, uncertain, imaginary and speculative uses cannot be shown. We do not, however, regard those cases as in point here. The rule established by such cases is well recognized and not to be disturbed, but there is a broad distinction, which appellant's argument does not seem to recognize, between the value which the expectation of changes or improvements may give to land and the value which changes or improvements, when actually made, may add to land. The cases relied upon by appellant do not hold that if the expectation of changes or improvements does actually affect the cash market value of land sold in the open market, such value is not a proper basis for the estimation of damages.

The theory on which this case was tried was that appellant was under contract to convey to appellee land on August 1, 1891; that he broke his contract and was liable to appellee for the excess, if any, above the contract price which appellee could have obtained for such

land in the open market, when sold for cash, on the day of such breach. It is conceded that the said land on said day, if used only for farm purposes, was not worth more than or scarcely half of the contract price. But appellee, if the lands were conveyed to him according to the contract, was under no obligation to continue their use for farm purposes. It was his privilege to buy and sell and derive a profit on his contract, if he could. The testimony offered was to the effect that appellee, had he been permitted to sell in the open market, for cash, could have, on said August 1, 1891, derived a certain profit, thus giving the jury a basis on which to estimate his damages. It is not uncommon for the price which real estate will bring in the open market to be affected, more or less, by the expectation of changed conditions in the neighborhood of the property, and in this case, so far as the cash market value of the land was affected by such expected change, the appellee was entitled to show by the evidence and have the benefit thereof. *Cobb* v. *Boston*, 112 Mass. 181; *Moulton* v. *Newburyport Water Co.* 137 Mass. 163; *Sanitary District* v. *Loughran*, 160 Ill. 362.

Appellant next assigns as error that appellee was permitted to introduce, as claimed, incompetent evidence "of alleged sales of other lands which were not actual sales for cash, but were on time, some of which completely failéd," and also introduced "evidence of sales of dissimilar property, with better locations and more desirable." In those sales which are said to have been on time, part, only, of the purchase price was deferred, and such deferred payments bore six per cent interest, and while the point to be arrived at by the jury was the actual cash value of the land in controversy at a certain time, we think that evidence of other sales of the character testified to might furnish some criterion valuable to the jury in fixing such cash value; and such evidence would also furnish a means of testing the value and weight to be given the testimony of appellee's witnesses who swore

as to the actual cash value of the land. If evidence were to be excluded of all sales every cent of which was not cash, the door would practically be closed as to the evidence of other sales, and such evidence, when of similar land in the same community, has always been regarded as the most satisfactory. We think the evidence as to the other sales was clearly competent, but, of course, the value of such evidence was for the jury, and appellant had the right, by cross-examination, to elicit all the unfavorable facts connected with such sales, and thus minimize, as much as he could, the weight of such evidence.

The contention of appellant that such sales, or some of them, failed, is based on the fact that the purchasers did not in all cases pay the actual amount agreed upon, and a number of years after the transaction the vendors disposed of their mortgages at a discount. We concede this might be shown so as to militate against the weight properly to be accorded such evidence, but it can hardly be said that the sales failed. There is nothing very peculiar or strange in the fact that the holder of a mortgage disposes of it at a discount. But however this may be regarded, it is disclosed by the evidence in this case that, taking into consideration the discount testified to, still the vendors in the sales testified about received more, without including the interest, than was the evident valuation placed by the jury on the land here in question.

It is objected, however, that the sales testified to were of lands dissimilar in quality and location to the land involved in the contract. We do not think the evidence shows such dissimilarity as to support this objection. The lands were all in the vicinity of Waukegan. As a matter of fact, the location and quality of all could not be precisely the same. The relative distances from the principal parts of the city had probably as much to do as any other factor in varying the price, and this fact could easily be, and was, made to appear by the evidence. We regard the evidence as conclusively showing

that there was, as to the lands testified about, a general similarity in location, character and adaptability, and we think the evidence was competent to go to the jury to assist them, in connection with the other facts and circumstances in the case, in determining the question presented to them. *St. Louis, Vandalia and Terre Haute Railroad Co.* v. *Haller*, 82 Ill. 208.

It is next insisted that there was an undue restriction in the cross-examination of appellant's witnesses as to the value of certain lands testified about and that a given sale had failed. Relative to these questions it was proper to allow a broad latitude in the cross-examination, but we have examined so much of these objections as is urged in the brief of appellant's counsel and find the objections are untenable.

It is insisted in appellant's brief that the court improperly denied him the right to introduce evidence as to the fair cash market value of the land a reasonable time before and after August 1, 1891. We regard appellant's rights as not having been improperly sacrificed in the respect mentioned.

Appellant next urges upon our consideration alleged improper remarks of the trial court during the progress of the trial. These remarks were made in the course of a controversy with appellant's counsel in regard to the execution of the contract, the court insisting that as it was admitted that there was a contract and breach it was useless to take up time quibbling about the execution of the contract or to go over matters that were already settled, and a review of the case satisfies us that the court properly stated the issues and committed no error as to the point in question.

Appellant next insists upon numerous alleged errors as to instructions. The principal objection urged as to the first instruction is, that it directs the jury to estimate the land at its market value on August 1, 1891, no matter whether such rise in value was permanent

or temporary. ˙ The sole question before the jury was the determination of the cash market value of the land on August 1, 1891,—the day of the breach,—and if such value was greater than the contract price, then the excess furnished the jury a definite basis on which to estimate appellee's damages. As stated when this case was formerly before this court, (*Dady* v. *Condit*, 188 Ill. 234): "The measure of damages was the increased value, if any, of the premises at the time of the breach, [August 1, 1891,] above the contract price."

The main point in the objection to this instruction seems to be, that it was error to confine the jury, in their estimation of the value of the land, to the particular day of the breach, and to advise them that it made no difference whether the conditions which fixed the market price of the land on that particular day were permanent or not. It was not wrong thus to advise the jury. As already stated, it was the market value of the land on a particular day that the jury were charged with the duty of estimating, and we cannot see how error could arise from admonishing them that they were not to be governed by the conditions of the market prior or subsequent to the day stated. If they were to be controlled by the variations of the market, and the market proved to be unsteady through a long period, as with some commodities might very likely be the case, we are unable to see how the jury could arrive at any definite conclusion, and the very necessity of the case would seem to require the limitation that is complained of in this instruction. In our judgment the point urged by appellant is not well taken.

The seventh instruction told the jury "that the market value of land is the highest price which it will bring in cash on the open market," and then also told the jury that if, by reason of the conditions existing on August 1, 1891, the land in controversy would then have sold in the open market, for cash, for more than Condit agreed to

pay for it, the jury should take such increased value into consideration in arriving at the value of the land at that time, no matter whether the conditions then existing were permanent or temporary. This instruction, appellant insists, told the jury that the "market value of the land is the highest price which the land will bring in the market, regardless of the causes that contribute to its value," and is therefore bad, and is also objectionable for the same error imputed to the first instruction. This latter objection has already been considered. In support of appellant's contention as to the first objection, it is insisted that this instruction is substantially the same as the seventh instruction condemned by this court on the former trial. What was there said is as follows: "The seventh instruction tells the jury 'that the market value of land is the highest price which the land will bring in the market, regardless of the causes that contribute to its value.' This is an incorrect definition. * * * Lands may bring in the market, under peculiar circumstances and on very favorable terms, much more than their fair cash value." We think there is a clear distinction between the instruction here presented and the one referred to on the former trial. The present instruction defines market value as the highest price obtainable in the *open* market for *cash*, and thus eliminates the objection stated in the opinion as to the former instruction. Having properly defined market value, the instruction then simply tells the jury that if the market value, as thus defined, of the lands on August 1, 1891, was more than the contract price, then such increased value should be taken into consideration by the jury, which was proper. By appellant's fifteenth instruction the jury were told that "the cash market value on August 1, 1891, of the tract of land in controversy in this case, is not the market value under peculiar circumstances and on very favorable terms, but is the sum for which the land could be sold at public auction, where the owner is not obliged to sell

and there are purchasers willing to buy." With so favorable an instruction in behalf of appellant we do not think the jury could have been misled by the instruction above complained of.

The third instruction for appellee was as follows:

"If the jury believe, from the evidence, that there was a demand for acreage property in and about Waukegan on August 1, 1891, for purposes of subdivision and sale in lots, and that the land in controversy was at that time supposed to be adapted to subdivision and sale in lots, and in consequence of its supposed adaptability to such subdivision and sale in lots had a market value above the price which the plaintiff, Condit, agreed to pay for it, the jury must take into consideration such increased value above such contract price, whether such demand for acreage property, if any, was permanent or temporary, and whether, if the land in controversy had been subdivided, there would have been at that time any demand for the lots thereof or not."

The objection that this instruction is substantially the same as the eighth instruction which was condemned by this court on the former trial is unfounded. The fault found with the previous instruction was as follows: "Even if the land was increased in value by a boom, that added value could in no way enter into the consideration of the jury 'in estimating the damages in the case' unless the increased value made it worth more in the market on August 1, 1891, than the contract price,—$150 per acre." The instruction condemned provided that if the land had an increased value by reason of a boom, etc., the jury were to take such into consideration, even though the increased value might not equal the contract price. The present instruction is not subject to such criticism. The word "supposed," in the instruction, is also objected to, but we think the objection is without merit. If land is supposed to be suitable for a particular purpose, and by reason of such supposed adaptability commands a higher

price when sold in the open market, for cash, than it otherwise would, such greater value is to be taken into consideration when estimating the value of the land. *Calumet River Railway Co.* v. *Moore*, 124 Ill. 329.

Appellee's fourth instruction contains the expression, "if the jury believe, from the evidence, that certain improvements were expected in and about Waukegan on August 1, 1891," etc., and it is objected that in this instruction the word "expected" is not qualified by the word "reasonably." In our judgment this qualification was not necessary in this particular case. Nor do we regard our holding as in conflict with the cases cited by appellant. Those were condemnation cases, and the point made in them was, that in estimating the damages, if the lands claimed to be actually adapted to some other purpose than the present use and sought to be condemned might be considered *reasonably* adapted to such other certain use, or if there was *reasonable* chance or probability of such changed conditions, and such reasonable adaptability or chance of change affected the actual market value of the lands at the time in question, then these contingencies were proper to be considered by the jury in determining the value of the land. In the present case certain improvements were expected in the vicinity of the lands in question, and, according to the evidence, such expectation did actually increase the value of the lands, and people were willing to pay more for them, when sold in the open market for cash, than they otherwise would, and we think the only just and legal rule to apply, under such circumstances, is, that such increased valuation was proper to be considered by the jury in estimating the value of the land, no matter whether such expectations were well founded or not.

By the fifth instruction the jury were told that "the price for which the land would have sold on the first day of August, 1891, is to be taken as its market value at that time, without regard to its present value, or its value at

any time since the said first day of August, 1891." It is insisted by appellant that this instruction is wrong, and that it was the duty of the jury, in determining the value of the land on the first day of August, 1891, to consider its value before and after the first day of August, 1891, within reasonable limits, and the case of *Springer* v. *City of Chicago*, 135 Ill. 552, is cited in support of this contention. We think the objection is not well taken, and for reasons already stated in this opinion. The case cited is not in point. In that case the recovery of damages occasioned by the construction of a viaduct was involved, and it was held the measure of damages was the difference between the market value of the property before and after the improvement. But the case at bar is different. Here the measure of damages, as previously stated, was "the increase of the value, if any, of the premises at the time of the breach [August 1, 1891,] above the contract price," and the sole point before the jury was the determination of the value on the day mentioned,—not their value before or after that time.

By the eighth instruction the jury were told that if they believed that sales of similar property in the neighborhood on or about August 1, 1891, had been made, they might take such sales into consideration in determining the market value in controversy on that date. This instruction is objected to as being incomplete, and that "it fails to state certain elements which should be taken into consideration in connection with sales." We fail to see wherein this instruction is erroneous. Sales of similar property in the vicinity were competent evidence, and any difference in the terms of such sales and the one being investigated was a circumstance to be taken into consideration in weighing such evidence.

By the ninth instruction the jury were told that they were sworn to decide the case according to the evidence, and that "a preponderance of the evidence on any point at issue is sufficient to justify a verdict for the side on

which the preponderance exists." It is objected to this instruction that under it there would have to be a preponderance of the evidence in favor of the defendant in order to find for him. We do not think the jury could have been so misled, for several other instructions informed the jury that the plaintiff could not recover unless he established his claim by a preponderance of the evidence. By the nineteenth instruction for appellant the jury were told that the "burden of proof rests upon the plaintiff to establish, by a preponderance of the evidence, every material allegation and fact necessary to a recovery in the case." The instruction is further objected to on the ground that by it the jury are told that if they find a preponderance of evidence on any point in the case, that is sufficient to justify a verdict for the side on which the preponderance exists. While this language is not technically correct, yet no harm could have resulted therefrom, for there was really but one point before the jury, which was, the value of the land on August 1, 1891.

Appellant next objects to the court's modification of his seventeenth instruction. This modification was proper, for, as offered, the instruction directed the jury not to consider the value of the land in controversy for the purpose of subdivision unless it was either actually subdivided or actually adapted to the purpose of subdivision. This is not the law. If the land was believed to be adapted to subdivision, and by reason of such supposition actually had a higher cash market value, such increased value was proper to be considered by the jury. The instruction told the jury that in considering the value of the land they "could consider its fair cash market value on the date aforesaid, and that value is to be determined by what it would have sold for at that time on the market for cash or its equivalent, so far as such fact is shown by the evidence." In this we think the jury were correctly advised.

Defendant's eighteenth instruction, as modified and given, was as follows:

"The jury are instructed that in determining the value of the one hundred and sixty acre tract of land involved in this case they are to fix the actual cash market value of said land on August 1, 1891; and you are further instructed that you are not to consider the price which the land would sell for under special or extraordinary circumstances not existing at the time, but its fair cash value if sold in the market under ordinary circumstances or under the circumstances then existing, for cash, and not on time, and assuming that the owner is willing to sell and the purchaser is willing to buy."

This instruction is objected to as having been directly condemned by this court in its former opinion in this case. (*Dady* v. *Condit*, 188 Ill. 234.) We do not regard this instruction as substantially the same as the instruction referred to and previously condemned. The latter instruction was condemned because it stated that "the market value of land is the highest price which the land will bring in the market, regardless of the causes that contribute to its value," and it was said that this rule as to market value is incorrect, as "lands may bring in the market, under peculiar circumstances and on very favorable terms, much more than their fair cash value." This objection does not appear in the instruction given in the present case, but here the jury are expressly told that they are to "fix the actual cash market value of said land on August 1, 1891," and to consider "its fair cash value if sold in the market under ordinary circumstances or under the circumstances then existing, for cash, and not on time, and assuming that the owner is willing to sell and the purchaser is willing to buy."

Appellant's nineteenth instruction, as modified, is objected to because the jury were told that the plaintiff was, in any event, entitled to nominal damages, and it is said in behalf of appellant that he had made a tender

of the costs and one dollar, so, unless the jury should find greater damages than one dollar, then the verdict should have been for defendant. It is useless to discuss this contention, for it is evident the defendant was not injured by the defect, if any, here claimed, since the jury did find that the damages were in fact much more than one dollar, and it is unnecessary to discuss how the verdict should have been if the damages found had been for one dollar or less.

On a review of the whole case we think defendant's instructions were as favorable to him as they legally could have been, and even if there are minor inaccuracies in appellee's instructions, the same were so supplemented by other instructions that we think the jury could not have been misled. We do not, however, wish to be understood as holding that a palpable error in one instruction will be obviated by another instruction where the two are clearly variant, but, simply, that where there is no marked inconsistency one instruction may supplement another, and the jury are presumed, in making up their verdict, to have considered the instructions as a whole.

We think no such error has intervened in this case as would warrant a reversal of the present judgment. The case has already been tried three times, each succeeding verdict being for appellee and being for a greater amount than the preceding. By the Appellate Court the last verdict was cut in two, thus relieving appellant of half the liability imposed upon him by the trial court. We feel that appellant was given a fair trial, and are not disposed to prolong this litigation because of slight inaccuracies or technical objections.

Appellee insists that the Appellate Court erred in not allowing interest on the amount found due him from August 1, 1891, to the time of the verdict, but we think there was no error in this respect. The damages due appellee for the breach of the contract were not so certain or defi-

nite that appellant could, without the verdict of a jury, know how much he was liable for, and the case does not come within the provisions of the statute for the allowance of damages. *Harvey* v. *Hamilton,* 155 Ill. 377; *Brownell Improvement Co.* v. *Critchfield,* 197 id. 61.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*