McGUIRE–CUMMINGS MFG. CO. v. UNITED ALLOY STEEL CORPORATION.

UNITED ALLOY STEEL CORPORATION v. McGUIRE–CUMMINGS MFG. CO.

(Circuit Court of Appeals, Seventh Circuit.   July 17, 1923.   Rehearing Denied
Sept. 21, 1923.)

Nos. 3200, 3201.

1. Sales ⊕⇒273(5)—Risk of fitness assumed by purchaser.
    Defendant, which had a contract with the railroad administration for
    building box cars, sent an order to plaintiff for steel plates cut to size
    specified, to be subject to government inspection and paid for when pay-
    ment was received under the contract. In answer plaintiff advised that,
    if the plates were for follower plates, the order be canceled and placed
    where the plates could be sawed, stating that it was equipped only for
    hot-shearing and that it had once made follower plates by that method
    and they had proved unsatisfactory, as not sufficiently true. Defendant,
    after referring the matter to the Director of Steel Supplies and being told
    that he thought that hot-shearing would be satisfactory but that the
    matter was for defendant to decide, repeated the order, which was then
    accepted; plaintiff, however, again stating that its former experience
    had been unsatisfactory. The plates were approved by an inspector at
    plaintiff's mill, but rejected by another at defendant's shop for the reason
    suggested by plaintiff. *Held*, that defendant waived the provisions for
    inspection and conditional payment and assumed the risk of the fitness of
    the plates, and was liable for the contract price.

2. Interest ⊕⇒15—Contract made by correspondence is one in writing.
    A contract made by correspondence is one in writing, within the Illi-
    nois statute allowing interest on money due on contracts in writing.

In Error to the District Court of the United States for the Eastern
Division of the Northern District of Illinois.

Action at law by the United Alloy Steel Corporation against the Mc-
Guire-Cummings Manufacturing Company.   Judgment for plaintiff,
and both parties bring error.   Modified and remanded, with directions.

Defendant below (McGuire-Cummings Manufacturing Company) had a con-
tract with the United States Railroad Administration to build for the govern-
ment 500 cars and gave plaintiff below (United Alloy Steel Corporation) the
following order for steel plates:

                                            "Chicago, 7—2—18.
"United Alloy Steel Corporation, Canton, Ohio: Please furnish this company
with the following and ship to Paris, Illinois: For U. S. R. R. Adm., ℅ Mc-
Guire-Cummings Mfg. Co.   Ship via PCC & StL.   Send invoices to Chicago
office.                              John T. Giblin, Purchasing Agent.
            Subject: 500—40 Ton Double Sheated Box Cars.

| No. Pcs. | Size | Marking |
|---|---|---|
| 2016 | 8–3/4″ x 2–1/4″ x 1′0–1/2″ | C-55 |

"Wt per pc. 69,727.   Base Price $3.25 Per Cwt. f. o. b. Pittsburgh, Pa.,
government schedule.
    "Ship as soon as possible.
    "Payment to be made upon receipt by us of remittance from the Railroad
Administration, which is to be made upon presentation of satisfactory evi-

ⒸⲢⲣFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

dence that material has been received f. o. b. cars our work. This material is bought subject to United States government inspection."

On receipt of order plaintiff wrote defendant:

"Canton, Ohio, July 15, 1918.

"McGuire-Cummings Mfg. Co., Harris Trust Bldg., Chicago, Ill.—Gentlemen: Referring to your order with us covering plates whereon you specify length of 12-1/2":

"We are wondering whether or not this steel is to be used for follower plates.

"Some time ago we tried to furnish material sheared to length for follower plates and found that sheared plates are not exact enough for this purpose and that unless they are sheared exactly to size they are not satisfactory

"If these plates are for follower plates, therefore, we would suggest that you cancel your orders with us and place your order where you can get the plates sawed to length.

"Awaiting your advice, regarding this matter, we are

"Very truly yours,                United Alloy Steel Corporation."

Defendant then wrote plaintiff:

"Chicago, July 17th, 1918.
"G–1.

"The United Alloy Steel Corporation, Canton, Ohio—Gentlemen: Subject: 500–40 ton double sheated box cars:

'We wish to acknowledge receipt of your favor of the 15th instant relative to the 2016 pcs. 8–3/4 x 2–1/4 x 1'0–1/2" follower plates, marking G–55, covered by our order G–36.

"We have to-day written Mr. J. L. Replogle, Director of Steel Supply, as per copy attached. Upon receipt of reply, we will advise you relative to cancellation.

"Yours very truly,                John T. Giblin, Secretary."

And afterwards again wrote plaintiff:

"July 27th, 1918.

"Mr. W. H. Wiewl, Assistant General Mgr. of Sales, United Alloy Steel Corporation, Canton, Ohio—Gentlemen: This refers to your letter of the 15th instant relative to order G–36 covering 2016 pieces 8–3/4 x 2¼ x 1 foot 1/2" follower plate.

"Wish to advise that we wrote the Director of Steel Supply for re-allocation, inasmuch as you suggested that we cancel our order to you and they reply as per copy of letter attached, which is self-explanatory.

"Will you kindly advise us immediately regarding this matter?

"Yours truly,                John T. Giblin, Secretary,"

inclosing copy of letter to defendant from J. Leonard Replogle, Director of Steel Supplies of the War Industries Board, as follows:

"Washington, July 23d, 1918.

"McGuire-Cummings Mfg. Co., Harris Trust Bldg., Chicago, Illinois— Gentlemen: We note your letter of July 17th inclosing copy of letter from the United Alloy Steel Corporation with reference to sheared plates.

"We believe the standard practice of shearing such as the United people may employ, should be entirely satisfactory. In fact we do not know any instance where in furnishing railroad material, sawing has been necessary.

"We believe this is a matter for you to decide and we are not inclined to think that re-allocation is necessary.

"Very truly yours, J. Leonard Replogle, Director of Steel Supply,

"Per [Signed]   G. M. Bartley."

Plaintiff then wrote defendant:

"Canton, Ohio, July 29, 1918.

"McGuire-Cummings Mfg. Co., Chicago, Ill.—Gentlemen: We have yours of the 7th regarding your order G–36 covering follower plates:

292 F.—53

"We note that Mr. Bartley in Mr. Replogle's office has advised you that he did not think sawing was necessary.

"The only way we can get out these plates is to hot-shear to size. This manner of cutting is not extremely accurate, nor is it absolutely certain that the cut will be square.

"The reason we took this matter up with you is that several years ago when we were making plates as one of our standard products, we attempted to furnish follower plates to one of the car companies (we believe it was Ralston) and our hot-sheared plates were not satisfactory for the purpose.

"We simply wanted to put the facts before you and will be very glad to proceed with your order based on furnishing hot sheared plates.

"Yours truly,    United Alloy Steel Corporation."

Plaintiff then wired defendant:

"Canton, O., July 30—18.

"McGuire-Cummings Mfg. Co., Harris Trust Bldg., Chicago, Ill.

"Referring our letter twenty-ninth regarding order G 36 shall we proceed with manufacture on basis this letter wire.    United Alloy Co."

The following day defendant wired plaintiff:

"7—31—18.

"United Alloy Steel Corporation, Canton, Ohio.

"Your letter twenty-ninth and telegram thirtieth follower plates if you will roll eight and three quarter inches wide hot shearing will be satisfactory and you can proceed accordingly. Answer.

"McGuire-Cummings Mfg. Co."

On same day defendant wrote plaintiff confirming last telegram. August 3, 1918, plaintiff wrote defendant:

"Aug. 3, 1918.

"McGuire-Cummings Mfg. Co., Chicago, Ill.—Gentlemen: Attention Mr. John T. Gibben. Your order G–36. Replying to your letter of July 31st, relative to shearing on above order. Beg to advise that we will hot-shear this material, as per your instructions. Have also made change in size as per your request.

"Yours truly,    United Alloy Steel Corporation."

To last letter defendant replied:

"Chicago, August 5th, 1918.

"United Alloy Steel Corporation, Canton, Ohio—Gentlemen: Attention: Mr. H. B. Miller, Mgr. Order Dept. Subject: Order #G–36. We wish to acknowledge receipt of your letter of the 3d inst. advising us that you will arrange to roll the follower plates on the above-mentioned order 8–3/4" wide and will hot-shear the length to 12–1/2" according to your standard practice.

"We wish you would kindly arrange to make shipment of this material at as early a date as possible.

"Kindly advise what we can expect in the way of shipment.

"Yours very truly,    John T. Giblin, Secretary."

Plaintiff thereupon proceeded to roll and hot-shear the plates, and an inspector for the government inspected and accepted them at plaintiff's mill, Canton, Ohio, whence they were shipped to defendant's shops at Paris, Ill., where another government inspector inspected and rejected them as being unusable for follower plates in the draft of the cars, for which purpose they were intended, but could not be used because of the slight excess in length, wherefore they would not fit in their intended place.

The action was for the price of the plates, for which verdict and judgment were given plaintiff. Interest was not included in the judgment, but it was stipulated between the parties that if the court should conclude plaintiff was lawfully entitled to interest, the judgment, if sustained, might be increased accordingly. Defendant below brings error to reverse the judgment, and plaintiff brings error because interest was denied it.

In No. 3200:

Willard McEwen, of Chicago, Ill., for plaintiff in error.

Edward R. Johnston, of Chicago, Ill., for defendant in error.

In No. 3201:

Edward R. Johnston, of Chicago, Ill., for plaintiff in error.

Willard McEwen, of Chicago, Ill., for defendant in error.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1] That the plates, at least for the most part, were somewhat longer than the specified 12½ inches and were somewhat bulged or rounded at the end where sheared is not disputed, nor is it contended that this did not unfit them for use as follower plates on this job. Beyond the fact, as shown by the correspondence, that the plates were to be used as follower plates, it does not appear that plaintiff knew anything about the details of defendant's contract with the government, and did not know the dimension of the particular space in which the plates were to be used. It appears that they were hot-sheared at 12½ inches, but, that, in so shearing them, of necessity the hot soft material was pressed out somewhat, leaving a sort of fin and a rounded edge extending slightly beyond the 12½ inches.

After the order was given, plaintiff, suspecting that the product was to be used for follower plates, communicated its suspicion to defendant and stated, in substance, that with its equipment it could only shear the plates, and that its experience had been that shearing such was not exact enough, and plates to be so used should be sawed, advising cancellation of the order and placing it where the plates could be sawed to length. When defendant communicated this information to the War Industries Board, it was informed that they did not consider sawing necessary and believed that shearing, such as plaintiff might employ, should be satisfactory, but expressed the belief that this was a matter for defendant to decide. On receiving this information from defendant, plaintiff again wrote defendant saying that their hot-sheared follower plates had proved unsatisfactory for the purpose, but that they wished to put the facts before defendant before proceeding with the order, whereupon plaintiff was directed to proceed.

We conclude from this correspondence that if the plaintiff exercised its usual and reasonable care in hot-shearing these plates to 12½ inches in length, but that nevertheless there occurred such variation only as that to which plaintiff had directed attention of defendant before accepting the contract, the risk of this variation was wholly upon the defendant and it cannot impute blame to plaintiff because plaintiff's prediction had come to pass.

It is urged that in the order it is specified that the material is bought subject to United States government inspection, and that payment should be made on receipt by defendant of remittance from the Railroad Administration, and that this should defeat the action, because ultimately the government inspectors rejected the plates and manifestly the government never has paid defendant for them. But this is bound up

with the proposition of the assumption of risk in the making of these plates by the hot-shearing process. Before accepting the order plaintiff pointed out to defendant that its facilities would probably not result in a satisfactory product, and although Replogle for the government wrote defendant that he thought the plaintiff's shearing process would result in a satisfactory plate, he said the defendant would have to use its own discretion. Under the special circumstances of this case it would seem that if plaintiff furnished the hot-sheared plates in compliance with defendant's final instructions for such product, with full knowledge on defendant's part that plaintiff did not undertake such accuracy as would come from a proper sawing of the plates, defendant, in assuming this risk, to that extent modified these clauses which it had stamped upon its original order.

It is urged that serious error was committed in the refusal by the court to permit witnesses to testify that the plates were not produced in accordance with good mill practice generally. Perusal of the correspondence which constitutes the contract warrants the conclusion that the undertaking of plaintiff was to produce the plates in accordance with its practice without reference to mill practice generally. It frankly stated that its practice had not theretofore resulted, and probably would not result, in the production of accurate and usable follower plates. It evidently was not equipped to produce follower plates, and it was not to be expected that for the purpose of properly executing this contract plaintiff would install a suitable plant.

The tenor of the correspondence would indicate that if it undertook the job it did not expect to turn out a product any better than in its previous unsatisfactory attempt at making follower plates. This gives added significance to those words in the correspondence which would of themselves indicate that the work was to be done in accordance with plaintiff's mill practice, and without reference to the mill practice generally. The fact that a witness for plaintiff had been permitted without objection to testify that its practice was similar to good mill practice generally did not, against objection, warrant the defendant in showing what the general mill practice was. The court's charge practically ruled out the evidence of what the general mill practice was, and limited this proposition to plaintiff's mill practice.

It is objected that defendant was not permitted to show it had demanded and had been refused payment from the government. This is immaterial here. Whatever the equities may be between the defendant and the government, because of which the government ought perhaps to pay defendant for these plates notwithstanding they could not be used in the place for which they were intended, it will not be presumed that the government did in fact pay defendant for them. Even if payment by the government were a prerequisite to plaintiff's right of recovery, the burden would have been upon plaintiff to show that such payment had been made, and in such case it would be presumed as against plaintiff that the government had not paid defendant for them.

The statement in the court's charge that there is no evidence that defendant made an approach to the government "to get payment for these

plates under any such circumstances" does not state that no demand whatever had been made. As pointed out, the ultimate fact is that the government did not pay, and it is immaterial whether or not demand therefor was made.

Of the many propositions urged in reversal of the judgment we believe we have considered the salient features of the case for plaintiff in error, and are of opinion that the record shows no substantial error to its disadvantage.

[2] Respecting the contention of defendant in error that it is entitled to interest at lawful rate, it seems that the contract here sued on was in writing, made up by the correspondence between the parties. The case falls within the Illinois statute which allows interest on money due upon contracts in writing. We have quite recently upheld demand for interest under circumstances more or less similar. Morrison v. Rieman (C. C. A.) 261 Fed. 355; National Surety Co. v. McCormick (C. C. A.) 268 Fed. 185.

The cause is remanded, with direction to the District Court to enter, in lieu of the judgment rendered herein, a judgment for plaintiff below in the sum of $5,450.02, together with interest thereon at the rate of 5 per cent. per annum from date of delivery of the plates by plaintiff below to defendant below, as appears from the transcript of record herein, to the date of entry of the judgment as hereby directed. Defendant below shall pay the costs hereof.