Aaron B. WEINER: LaSalle National Bank, not personally but as Trustee under Trust Agreement dated December 28, 1954, and known as Trust No. 17365; Leo S. Hirschfeld: Board of Appeals of the City of Chicago, B. Emmet Hartnett, C. Logan McEwen, Michael L. Igoe, Jr., Earl J. McMahon and Karl M. Vitzthum, individually and as members of the Board of Appeals of the City of Chicago; George L. Ramsey, individually and as Commissioner of Buildings of the City of Chicago; and City of Chicago, a municipal corporation of Cook County, Illinois, Plaintiffs-Appellees,

v.

222 EAST CHESTNUT STREET CORPORATION, a corporation of Delaware, and Maryland Casualty Company, a corporation of Maryland, Defendants-Appellants.

No. 13457.

United States Court of Appeals
Seventh Circuit.

May 29, 1962.

Rehearing Denied July 18, 1962.

---

Samuel W. Block, Chicago, Ill., Robert L. Bombaugh, Chicago, Ill., for 222 East Chestnut Street Corporation and Maryland Casualty Company, defendants-appellants.

Thompson, Raymond, Mayer, Jenner & Bloomstein, Chicago, Ill., of counsel.

Robert Plotkin, Chicago, Ill., John C. Melaniphy, Corp. Counsel, Chicago, Ill., for appellee.

Abner J. Mikva, Fred R. Mardell, Chicago, Ill., for Aaron B. Weiner, and La Salle National Bank, plaintiffs-appellees.

Before DUFFY, SCHNACKENBERG and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

This action was instituted in the District Court to recover damages under the terms of a supersedeas bond executed by 222 East Chestnut Street Corporation [1] as principal and Maryland Casualty Company as surety in an amount of $60,000.-00. 222 and Maryland are defendants-appellants. The obligees on the bond included Aaron B. Weiner and LaSalle National Bank as Trustee under Trust

1. Hereinafter sometimes referred to as 222.

No. 17365, plaintiffs-appellees, and numerous municipal officials. The cause was tried by the court without a jury. The court after making and entering detailed findings of fact and conclusions of law entered judgment in favor of Weiner and LaSalle National Bank, as trustee,[2] against 222 and Maryland for $72,617.66 and assessed $500.00 attorneys' fees as costs against Maryland.

The suit in which the supersedeas bond was given was a state court action instituted by 222 to reverse the action of the Zoning Board of Appeals of the City of Chicago in granting LaSalle National Bank[3] a zoning variation to permit construction of a 23-story brick apartment building with attached 3-story garage without the normally required set-back of approximately eleven feet. The state trial court affirmed the Zoning Board of Appeals and 222 prosecuted an appeal to the Supreme Court of Illinois. On application of 222 it was ordered that a supersedeas issue staying all action by Weiner and the Bank in the erection of the structure pending final disposition of the cause conditioned on the furnishing of a surety bond in the penal sum of $60,000.00. The bond furnished and approved obligated 222 and the surety to "pay any and all damages suffered by LaSalle National Bank * * * and Aaron B. Weiner, by reason of any delay arising from the granting of said supersedeas and stay, in case the judgment is affirmed, * * * * ". The Supreme Court of Illinois affirmed the judgment (222 East Chestnut Street Corporation v. Board of Appeals, 10 Ill.2d 132, 139 N.E.2d 218) on November 26, 1956 and denied rehearing on January 23, 1957. The supersedeas and stay order was terminated December 19, 1956 on plaintiffs-appellees' motion.

The findings of fact and conclusions of law entered by the District Court disclose that the judgment for $72,617.66 represents an award of damages equal to the full monetary limit of the bond ($60,000.00) plus interest on that amount at 5% per annum from January 23, 1957. The findings and conclusions also disclose that the court found and concluded that the plaintiffs sustained various items of damage aggregating $106,383.68 by reason of delay arising from the supersedeas and stay. Included are an amount of $45,480.70[4] found to represent an increase in financing costs—a rise in the interest rates on construction and mortgage loans, and an item of $26,120.00 found to represent increased costs on one of the construction contracts involved due to wage and material cost rises. If the District Court did not err in respect to these two major items, which total in excess of the monetary limitation of the bond, it is unnecessary that we consider the other items included in the $106,383.68 aggregate. In view of this we elect to first consider and dispose of the contested issues relating to these two major items.

Appellants' contentions in this connection are, in substance, that the record does not contain substantial support for the District Court's findings that plaintiff Weiner in August of 1956 intended and planned, and was ready, able and determined to proceed with construction of the apartment building, and that the supersedeas and stay caused construction delay; that the increase in the financing cost was not attributable to the stay and is too remote and speculative to constitute a proper element of damage; and that the evidence is both factually and legally insufficient to support the findings of increased construction costs.

2. Judgment was entered in favor of defendants-appellants against all plaintiffs other than Weiner and the Bank and no appeal has been taken from that part of the judgment.

3. The Bank holds title as trustee to the property commonly known as 247–253

East Delaware Place, Chicago, Illinois, and Weiner is the sole beneficiary of the trust.

4. Increase in financing costs of $1,554.24 on interim construction loan and $43,926.-46 on mortgage loan.

Our review of the record convinces us that the District Court's findings on the issues as to whether construction delay was caused by the supersedeas and stay, and whether the increased financing and construction costs embraced in the two major items under consideration were occasioned thereby, have substantial support in the record in so far as factual considerations are concerned and that the court applied correct legal criteria in reaching the conclusions it did. We do not deem it necessary that we make any detailed recital of the evidence. The following summarization of pertinent factors will serve to illustrate the evidentiary basis for the court's ultimate findings.

The record discloses that wrecking, excavation and concrete pouring operations were commenced on the building site August 27, 1956 and continued until interrupted by the supersedeas and stay order of September 5, 1956. Prior to those operations the plans and specifications for the substructure had been completed, Weiner had orally contracted for the substructure work on a cost plus basis, a building permit for such work had been secured, and arrangements for both interim construction financing and mortgage financing had been made, the latter a commitment from the Prudential Insurance Company of America for a mortgage loan of $1,800,000.00 at an interest rate of 4¾ per cent per annum. The mortgage loan was to be used to repay interim construction loans.

The supersedeas and stay was in effect, and construction restrained, until December 20, 1956. During this interval plaintiffs were prevailed upon to substitute concrete caisson foundation construction for the wood piling foundation originally specified but the circumstances surrounding this change in construction method are not indicative, as urged by appellants, that the previous operations, activities and arrangements were but mere sham and that at no time prior to or during the supersedeas period were the plaintiffs ready, able and determined to proceed with construction to completion.

Construction was resumed December 20, 1956 and continued through December 28, 1956 when it was suspended until February 7, 1957 because of uncertainty concerning the financing commitments. The original commitment for the mortgage loan made in August 1956 required that the building be completed by August 28, 1958 and disbursement of the loan proceeds was not to be made until completion of the building. Shortly after the November 26, 1956 decision of the Illinois Supreme Court Weiner was advised by the representative of the bank which plaintiffs were relying upon to furnish the financing during the construction period that it was a condition of the banks'[5] providing the interim construction financing that the completion date specified in the mortgage loan commitment be extended so as to provide two years, or almost two years, from the recommencement of construction for completion of the building. Early in December 1956 Prudential was approached with reference to the proposed extension of the building completion date. Discussions and negotiation followed and culminated in a conference January 23, 1957 at which the terms of the extension were worked out. Construction was resumed February 7, 1957 and the amended formal mortgage commitment was issued February 14, 1957. Interest rates had advanced over the rates prevailing in August 1956 and it was necessary for plaintiffs to agree to a 5% per annum rate to obtain the extended commitment on the mortgage loan. Likewise, the interest rate on loans for construction had advanced ¼% and it was necessary to pay interest at the increased rate on the monies advanced by the banks for financing during the construction period. There was no written agreement executed covering the interim construction financing until July 26, 1957 and before any payments thereof were made Weiner had by that time advanced $480,000.00 in

---

5. Two banks were to participate in the loan but one was handling the matter for the other.

equity money, the substructure was completed, and the superstructure under way. The oral commitment for the bank construction loans had been made prior to August 1956 and if the loans had been closed during October or November of that year the interest rate would have been ¼% less but the construction delay and consequent need for an extension of the mortgage commitment intervened before the bank construction loans were actually obtained.

Appellants have advanced arguments based on certain of the testimony concerning the status of superstructure plans and specifications, testimony relating to changes made in the substructure plans and specifications due to adoption of the caisson method of construction, the lack of a request for and taking of bids for the substructure work, the failure to notify the adjoining property owner prior to the construction activities in August 1956, and the failure to give certain notices and obtain certain permits, as bearing on the lack of substantial support for the court's finding that the supersedeas and stay caused construction delay. We have considered these and the other peripheral contentions made by the appellants on this issue and find them without merit.

■■ And, it is evident from the record that the construction delay required an extension in completion date of the original mortgage commitment in order to assure the banks expecting to make the construction advances that their loans would be repaid. Under the circumstances here presented the increase due to the rise in interest rates was an item of damage attributable to the stay and properly recoverable under the terms of the bond. It is a matter of common knowledge that construction projects of the type here involved ordinarily require financing and that interim construction financing is utilized to secure construction funds which are repaid from proceeds of a mortgage loan on the completed structure. In such situations additional expense resulting from a rise in the "cost of money" is as much an element of damage as additional expense caused by a rise in labor or material costs. Where such expenses are incurred as a result of construction delay occasioned by a supersedeas and stay they are a natural and proximate result of the stay and are "damages suffered * * * by reason of [a] delay arising from the granting of said supersedeas and stay" within the purview of the bond given by appellants. We find none of the authorities relied upon by appellants to establish that the increased financing costs here incurred are too remote or speculative to constitute proper elements of damage to be persuasive.

■ In computing the damages arising from the increase in the interest rate on the mortgage loan the additional amount of interest on future installment payments was determined and the total present value of the excess monthly payments attributable thereto discounted at 4%[6] was allowed as damages in addition to the additional interest on the payments theretofore made. That the loan contains certain prepayment privileges and is in the form of a trustee's note, secured only by the value of the property, do not in our opinion preclude the allowance of damages so representing the excess or additional interest on the future installment payments. Appellants' contention that the award in so far as it reflects damages for the additional interest on future installments is an award of contingent damages which may never accrue to plaintiffs because of lack of personal liability on the note overlooks the fact of Weiner's sole bene-

6. The court found 4% to represent the current rate of return on safe investments not requiring outstanding experience and skill in selection and management and which can reasonably be expected on the investment of an amount to provide a monthly annuity payment equal to the additional interest on the future installments.

ficial interest in the site and the equity money [7] he has invested in the project.

The District Court found that solely by reason of the delay arising from the supersedeas and stay the cost of construction of the superstructure of the building was increased and such additional cost included an item of $26,120.00 representing increased cost for work performed in the construction of the superstructure by Carl E. Erickson Co. Both the contractor and the architect testified concerning the increased costs on the basis of the actual price of the superstructure work and their calculations as to what it would have been performed for under lower wage rates and material prices which would have applied to approximately one-half of the work which would have been performed at the lower rates and prices except for the delay. Appellants offered no evidence on the subject. The $26,120.00 figure represents additional construction costs testified to by the architect as based on increased labor costs and the increased price of concrete alone. The finding of the District Court on this item is supported by the record and the evidence adduced conformed to proper standards of proof. Clarke Const. Co. v. United States, 7 Cir., 290 F. 192.

Our disposition of the issues concerning the two major items of damage makes it unnecessary to consider the other items making up the $106,383.68 aggregate.

Appellants contend that the District Court erred as a matter of law in allowing pre-judgment interest on the $60,-000.00 award in the penal sum of the bond. The interest was allowed in reliance upon that part of Ill.Rev.Stat. 1959, Ch. 74, § 2 which provides:

> "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; * * *."

The court concluded that this provision of the statute required the automatic allowance of interest in the instant case without regard to whether the amount was liquidated. The following cases are relied upon to support that conclusion: Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 381, 37 S.Ct. 614, 61 L.Ed. 1206, affirming United States v. Illinois Surety Co., 7 Cir., 226 F. 653; National Surety Co. v. McCormick, 7 Cir., 268 F. 185; Holmes v. Standard Oil Co., 183 Ill. 70, 55 N.E. 647; Santa Cruz Oil Corp. v. Allbright-Nell Co., 7 Cir., 115 F.2d 604; McGuire-Cummings Mfg. Co. v. United Alloy Steel Corp., 7 Cir., 292 F. 832; Morrison v. Rieman, 7 Cir., 261 F. 355; Heissler v. Stose, 131 Ill. 393, 23 N.E. 347 and Elgin, J. & E. Ry. Co. v. Northwestern National Bank, 165 Ill.App. 35.

The first three cases cited approve the allowance of interest under the statute where an award is made for the full monetary amount of a penal bond but they concerned surety bonds in which the subject matter of the obligation carried its own inherent due date. Illinois Surety Co. involved a contractor's bond conditioned upon prompt payment of amounts due persons supplying labor or materials on a government construction project. Interest was allowed from commencement of the suit for breach of the bond. National Surety Co. was a suit on a depository bond conditioned upon the payment out of monies in accordance with directions of the obligee. Interest was allowed from commencement of the suit. In Holmes the bond was conditioned upon the payment of "assessments, liens, judgments and demands * * * that may at any time be levied or come against said premises"—all items which would be "due" before they could "come against the premises" and the non-payment of which constituted the breach. Interest was allowed from the date the obligee paid the assessment which had become a lien.

7. The total construction cost exclusive of land was approximately $2,600,000.00.

The remaining cases all involve contracts in which the time for payment was either expressly fixed or determinable with reference to a specified event.[8]

In all of the decisions relied upon by plaintiffs, interest was allowed under the statute for a period which commenced when or after payments under the contract, or payments which constituted the subject matter of the bond's obligation, were due and the requirement of the statute that the monies had "become due on [a] bond * * * or other instrument of writing" was met.

■ The bond here involved secures the payment of "any and all damages" suffered by reason of delay arising from the supersedeas and stay in the event of affirmance of the case on appeal. The obligation is to pay "damages"—a term here used in the sense of monetary compensation for financial loss but which of itself embodies no inherent connotation of a "due" date. The bond does not by express provision, implication, or by reference to the subject matter of its obligation, specify when payment thereunder for the loss, if loss occurs, is to be made[9] nor identify any event from or with reference to which payment is due. Here neither the instrument nor the subject matter of its obligation expresses or implies a definite time when monies are due. The interest statute therefore does not apply and the rationale of Harvey v. Hamilton, 155 Ill. 377, 380, 40 N.E. 592,

governs. In that case it was pointed out that where the interest statute had no application to damages awarded for breach of a written contract because the demand was not for "money due" under its provisions:

" * * * [I]t is safe to say that, in Illinois, interest is not allowable on unliquidated demands in any case where the amount of damages is not ascertainable by simple computation or by reference to generally recognized standards, such as market prices."

The District Court erred in allowing prejudgment interest.

■ The final contention that we need consider is whether the District Court erred in assessing $500.00 attorneys' fees as costs against defendant-appellant, Maryland Casualty Company. Ill.Rev. Stat.1959, Ch. 73, § 767 authorizes such action where the surety company's refusal to pay on demand is "vexatious and without reasonable cause". On the record before us, and in view of the unliquidated nature of the damages and lack of provisions in the bond as to time of payment of loss or damage, we find no basis for a finding that Maryland's refusal was vexatious or without reasonable cause. It was error to assess attorneys' fees as costs.

The judgment order of the District Court is affirmed in all respects except insofar as it includes an allowance of

8. In Santa Cruz the contract provided that one-half of the actual net selling price of the machinery was payable "when and as received by" the seller. In McGuire-Cummings the correspondence constituting the contract provided that payment for the steel plates was to be made upon the buyer's receipt of remittance therefor from the Railroad Administration which remittance was to be made upon presentation of evidence that the plates had been received f. o. b. the site of the work. In Morrison the claim was predicated upon a written undertaking to pay one-half of money and property recovered and the right to payment was found to have accrued on a specific date prior to the bankruptcy. In Heissler the lease fixed the date the rental payments were due as the

first day of each month—monthly, in advance. In Elgin, J. & E. Ry. Co. the $1,727.43 on which interest was allowed was due under provisions of the contract at the time the contractor directed that payment be made to the bank.

9. Cf. Jay-Bee Realty Corp. v. Agricultural Ins. Co., 320 Ill.App. 310, 50 N.E.2d 973 where although the damages were unliquidated, the Illinois interest statute was held applicable to a recovery under an insurance policy which expressly provided that the monetary indemnity was payable within a fixed period from the submission of proof of loss. See also: Knickerbocker Ins. Co. v. Gould, 80 Ill. 388, 395 and Lewis Mach. Co. v. Aztec Lines, 7 Cir., 172 F.2d 746, 750.

pre-judgment interest and contains an assessment of attorneys' fees as costs; it is reversed as to the allowance of interest on the $60,000.00 recovery awarded and reversed as to the assessment of attorneys' fees as costs. The cause is remanded to the District Court with directions to modify the judgment order in conformity herewith.

No allowance of costs in this Court is made to either party.

Affirmed in part; reversed in part; and remanded with directions.