## HENRY MUCK, Respondent, v. WILLIAM R. HAYDEN, Appellant.

### St. Louis Court of Appeals, April 8, 1913.

1. **FRAUD AND DECEIT: Sale of Corporate Stock: Misrepresentations: Sufficiency of Evidence.** In an action on a note given for the purchase price of corporate stock subscribed for, defended on the ground of fraudulent representations by the

salesman concerning the corporation being in a flourishing condition, evidence *held* to show that defendant was fully cognizant of the condition of the corporation and hence could not have been misled by the alleged misrepresentations.

2. ——: ——: ——: ——. A representation by a seller of corporate stock of the par value of $50 a share, that it had an actual intrinsic value of $120 a share, made for the purpose of inducing, and which did induce, a purchase of the stock, and which was untrue and designed to deceive the purchaser, was a fraud sufficient to invalidate the transaction and discharge the purchaser from his obligation to pay a note given for the purchase price.

3. ——: ——: ——: ——. In an action on a note given for the purchase price of corporate stock subscribed for, defended on the ground of fraudulent representations, that the stock, which was of the par value of $50 per share, was of the actual intrinsic value of $120 a share, evidence showing that the subscribed and paid-up capital stock of the company amounted to $417,725 and the subscribed and paid-up surplus to only $129,397.90, that the value of all the property owned by the company was $550,139.53, and that the company had no income except from the sale of stock and some interest on loans, sufficiently showed that the stock did not have the actual intrinsic value represented.

4. **EVIDENCE: Value of Corporate Stock.** Where nothing more appears on the question, the par value of corporate stock is regarded prima facie as its actual value.

5. ——: ——. In the absence of better evidence as to the value of the capital stock of a corporation, the market value of all its property may be considered with a view to arriving at the proportional value of the shares.

6. **FRAUD AND DECEIT: Sale of Corporate Stock: Reliance on Representations.** A person who knew nothing whatever about the value of life insurance stock, in purchasing such stock from the vice president and promoter of the company, had a right to rely on positive representations by the latter concerning its value; that being a question about which he was presumably fully advised.

7. ——: ——: Materiality of Representations. Where a seller of corporate stock of the par value of $50 per share represented that it was of the actual intrinsic value of $120 a share, another representation, in connection therewith, that it was increasing rapidly in value, was material and pertained to an existing fact.

8. ———: ———: **Opinion as to Value.** Where a seller of corporate stock of the par value of.$50 per share represented that it was of the actual intrinsic value of $120 a share and was increasing rapidly in value, a further representation that it would be worth $200 or $300 a share within two or three months was a mere expression of opinion, on which the purchaser had no right to rely.

Appeal from Pike Circuit Court.—*Hon. B. H. Dyer*, Judge.

REVERSED AND REMANDED.

*J. H. Blair* for appellant.

The court erred in instructing the jury to find for the plaintiff in the sum of $450 with interest thereon. The court thereby transcended its judicial rights, and illegally did that which the jury only could do. And this instruction clearly constitutes reversible error. Kroge v. Modern Brotherhood of America, 126 Mo. App. 702; Leder v. Morrow, 132 Mo. App. 443; R. S. 1909, sec. 1993.

*Creech & Penn* and *Hostetter & Haleu* for respondent.

NORTONI, J.—This is a suit on a promissory note. Plaintiff recovered and defendant prosecutes the appeal. By his answer defendant admits the execution of the note, but pleads that it was obtained from him through misrepresentations of fact pertaining to the sale of certain shares of stock in a life insurance company for which the note was given. At the conclusion of all of the evidence, the court peremptorily directed a verdict for plaintiff as if the evidence wholly failed to support the fraudulent representations relied upon in the answer.

It appears plaintiff is vice president of the Mid-Continent Life Insurance Company of Muskogee, Ok-

lahoma, and was engaged in selling the stock of that concern while it was in process of organization. He called upon defendant at his store and sold him ten shares of the stock at the agreed price of $120 per share. Defendant executed to plaintiff the note in suit for $450 as part of the purchase money and executed another note for $750, payable direct to the Mid-Continent Insurance Company. The insurance company was incorporated for one million dollars, divided into shares of fifty dollars each, which amount represented the par value. Defendant was wholly unadvised as to the insurance company and the value of its stock at the time, and he sets forth in his answer that plaintiff misrepresented the facts pertaining thereto and thus induced him to purchase the stock and execute the note in suit. It appears that the stock has never been delivered to plaintiff, for the reason, it is said, he has not paid either of the notes given therefor.

It is averred in the answer that at the time of selling the stock to defendant and taking his note therefor, plaintiff falsely and fraudulently represented to him that the Mid-Continent Life Insurance Company was in a flourishing condition; that almost all of its capital stock had then been sold; and that said stock was then of the intrinsic value of $120 per share and that the demand for said stock had become so great that it was increasing rapidly in value and that if defendant waited two or three months before purchasing it would then be worth $200 or $300 per share. It is averred, too, that defendant believed these representations and relied thereon and was thus induced to purchase the same and execute the note in suit.

Plaintiff introduced the note in evidence, and thereupon defendant assumed the burden and gave evidence tending to disprove some of the averments of his answer and tending to prove others. From defendant's evidence alone, it appears beyond question that he knew the insurance company was not in

a flourishing and prosperous condition, in so far as those terms may imply that it was transacting an extensive business at the time, for at most it was but recently organized and had not actually commenced writing life insurance. It appears plaintiff informed defendant that the company was just about ready to embark in the business for which it was being organized and that the stock was nearly all sold. Plaintiff represented that there were but a few shares remaining unsold at the time. Obviously the representation pertaining to the flourishing and prosperous condition of the company was not only not sustained but was thus disproved, for defendant could not have been misled on these facts to believe the company was a then flourishing going concern. However, the evidence reveals beyond question that defendant possessed no information touching the matter and that he relied entirely upon the representations of plaintiff when he purchased the stock from him and executed the note. The evidence is abundant to the effect that plaintiff represented that almost all the stock in the company was then sold and that the stock then possessed an actual intrinsic value of $120 per share. Such was the price at which it was sold to defendant: If such representation was made by plaintiff in order to induce defendant to purchase the stock and if defendant was induced thereby to purchase the same from plaintiff and relied thereon in so doing and the representation was untrue in fact and designed to deceive defendant and induce him to purchase the stock, it is entirely clear that it would constitute a fraud sufficient to invalidate the transaction and authorize a discharge of defendant from his obligation to pay the note. [See Reisel v. Winsor, 140 Mo. App. 612, 120 S. W. 1186.]

But it is said the court properly directed a verdict for plaintiff on the note because defendant failed to show the representation was false and that the evi-

dence reveals the stock was of the value so repre-
sented. We are not so persuaded. It is true there is
some evidence that plaintiff sold other stock in the
company at $120 per share and this was the price at
which defendant purchased, but the representation set
forth in the answer and that given in evidence by de-
fendant is that plaintiff represented the stock then had
an actual intrinsic value of $120 per share, and all of
the evidence tends to prove that this was untrue. The
company was incorporated for one million dollars.
The stock was divided into shares of a par value of
fifty dollars each. It is shown that the then-subscribed
and paid-up capital stock of the company amounted to
$417,725 and the then-subscribed aid paid-up surplus
amounted only to $129,397.90. It is conceded the com-
pany, at that time, was not doing business and it had
no income save from the sale of its stock and some
interest on loans. Obviously those figures do not re-
veal the stock to be of the actual intrinsic value of $120
per share and this is true notwithstanding plaintiff
may have sold other stock at that price. If nothing
more in the case appears on the question, then the par
value of corporate stock is regarded, prima facie, as
its actual value. [See Moffiitt v. Hereford, 132 Mo.
513, 34 S. W. 252.]

There is nothing in the evidence tending to show
the value of the corporation's stock, save the fact that
its par value was fifty dollars per share, and a list
of all of the property consisting of money in banks,
bills receivable, office furniture, fixtures, etc., owned by
the insurance company at the time. In the absence of
better evidence as to the value of the stock of the com-
pany, the market value of all of its property may be
considered with a view to arriving at the proportional
value of shares of its stock. [See Hewitt v. Steele, 118
Mo. 463, 474, 475, 24 S. W. 440.] It is shown by the
report of the treasurer of the insurance company that
the value of all of the property it owned at the time

was $550,139.53. The company was not doing business. It had no income save from interest accumulating on money loaned on real estate and as it came in from stock sales, and it is obvious that the stock in this one million dollar corporation, representing a par value of fifty dollars per share, was not of the actual intrinsic value of $120 per share at the time. Indeed, on the showing made, the probabilities are that its actual value was something near its par value.

Besides introducing the note to make a prima facie case, plaintiff put in no other evidence, and, notwithstanding the showing above made by defendant, the court instructed a verdict against him on the note. Obviously this was error, for the evidence tended to prove a false representation touching the value of the stock to be $120 per share and that it was not worth anywhere near that figure and it may be not more than one-half of it. Defendant was wholly inexperienced as to such matters. It appears he was a small country merchant and knew nothing in the world about the value of stock in a life insurance company. Plaintiff was vice president of the company, and the evidence tends to prove, one of its promoters. In these circumstances, it is clear enough that defendant had the right to rely upon the positive representations of the plaintiff made concerning the value of the stock, for it was a question about which he was presumably fully advised. [See Tinker v. Kier, 195 Mo. 183, 94 S. W. 501.]

In connection with the representation that the stock was of the actual and intrinsic value of $120 per share, the representation that it was increasing rapidly in value may be regarded as material, too, for it pertained to an existing fact. But so much of the representation relied upon to the effect that the stock would be worth $200 or $300 per share within two or three months we regard as a mere expression of opin-

173 Mo. App. 3

ion on the part of plaintiff and must have been well known to be such by defendant. Obviously one may not rely upon such expressions of opinion touching probable future values of stock and recover as for fraud and deceit therein when the facts turn out otherwise.

For the reasons above given, the judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.