In re KETCHAM'S, Estate.

ANDERSON, Appellant, v. KETCHAM, Respondent.

(171 N. W. 764).

(File No. 4378.   Opinion filed April 1, 1919.   Rehearing denied
June 3, 1919.)

1.   Executors and Administrators—Heirships to Realty—Partition
Among Heirs—Commissioners' Appraisal, Collusive Private
Sale to Non-heir, Fraud In Law Re, Judgment Confirming—
Attorney's Unwarranted Advice to Commissioners Re Prefer-
ential Heirship, Effect.

Where, upon final distribution of an estate, commissioners appointed to partition the realty concluded it could not be divided in kind, appraised the land and in reporting the appraisal recited that the husband of decedent, administrator of the estate, was willing to accept the whole of said land, they recommending acceptance of his offer, which report was confirmed by county court against the objection of A, deceased's sister, which judgment was upon appeal confirmed by circuit court; it appearing that one W. was the attorney of the administrator as such and in his individual capacity, and also attorney of one H, not an heir, he having conducted for H. all negotiations and transactions to which she was a party, she being his stenographer, that one of the commissioners was a brother of H, the evidence failing to show however that any of the commissioners was influenced by any improper motive, and no direct evidence that W. or H. was so influenced; that in making the appraisement the commissioners acted upon the supposition and belief that the land would be offered for sale; that after appraisement W. advised commissioners that the absent heirs, other than the administrator, would not take the land and pay or settle for same; that A. announced that she did not want it; that W. then advised commissioners he would

wire the administrator and ascertain if he desired to take it; that none of the heirs other than he and A. were ever advised as to appraised value, or given opportunity after knowing appraised value, to take the property at its appraised, or any other value; that the administrator wired that he would take the property, he acknowledging a deed conveying all of said lands to H; that W, on the date of filing the report, wrote to certain other heirs advising each that he was forwarding to a bank subject to call a check for a share of proceeds upon distribution, to be delivered upon delivery to bank of a quitclaim deed running to H, "who was furnishing the money to Mr. Ketcham, (administrator) to purchase this property in accordance with the petition decree," although no such decree was made until sometime thereafter, and stating appraised price, and closed by advising that "under our statute an interested party could take the whole of this land at the appraised value, **giving preference to the oldest male interested party.** Mr. Ketcham concluded to take it at the appraised value;" **held,** that the decree, confirming the report and setting over property to the administrator, should be set aside for fraud in law; assuming without deciding that there was no fraudulent intent upon part of the administrator, his attorney or H; it being clear that at time the commissioners appraised the land, negotiations had gone on, unbeknown to commissioners, between W. and the administrator looking to purchase of the land by H, providing the appraisement was at a figure low enough to satisfy her; the report having been prepared by W. and signed by commissioners under the belief that the administrator, as the oldest male heir, could take the property at its appraised value.

2. **Same—Fraudulent Sale to Non-heir on Commissioners' Report of Sale to Heir-administrator—Conflicting Interest Between Heir and Self as Administrator, and Vendee, Effect—Administrator's Duty Re Sale.**

Nor is the contention of administrator's counsel that there was no conflict of interest between K. as administrator, K. personally and H, tenable; since it was administrator's duty in case the land was not divided in kind, to get all possible for it; and if he believed that as oldest male heir, he was entitled to take the land at appraised value, he was directly interested in a low appraisement, as was also H; that the administrator's duty was to advise commissioners of every fact affecting the transaction— a trustee must not occupy inconsistent and antagonistic positions; which duty also rested upon W. to the same extent, whose duty it was to disclose to commissioners all negotiations that had taken place, and that H. stood ready to pay for the land, the adinistrator being charged with any information given W. by H, that if commissioners had received advice they should

have received, H's brother could not properly 'have' joined in the report; H. being also resident agent of administrator, and as such had received compensation from the estate and occupied a fiduciary relation thereto.

3.   Same—Appraisement and Distribution of Realty—Notice to Heirs Re Report of Sale to Heir—Administrator as Preferential Purchaser—Statute Re "Oldest Male Heir" Construed.

Held, further, that the administrator's contention that after he had expressed 'a willingness to take the land no notice to other heirs was necessary before commissioners' report, setting over land to him, "because the statute states fully what they must do under these circumstances, and such acts are only ministerial after the value has been fixed," is untenable; since the statute, Rev. Code 1919, Sec. 3479 (Prob. Code 1903, Sec. 317) does not give the oldest male heir preference except as between children; and it was incumbent after appraisal to advise the heirs of values at which the several tracts had been appraised and to give each an opportunity to determine whether he desired to take the land under the appraisement.

4.   Trusts—Distribution Re Decedent's Estate—Improper Discharge of Trust, Setting Aside Distribution, Regardless of Fraud on Cestui Que Trust—Rule.

Where trustees have failed to properly discharge their duties, courts will not inquire as to whether such failure resulted in actual fraud or in loss to a cetui que trust; but, as against party in fault, will set aside the transaction wherein trustee failed to fulfill his trust. So held, in setting aside commissioners' report of sale of indivisible realty of an estate, and judgment pursuant thereto; the evidence showing that the course pursued by the parties who benefited by the transaction gave opportunity for perpertration of a grevious fraud on court and on the other heirs.

5.   Executors and Administrators—Distribution of Realty—Appraisal Commissioners' Duties—Statute.

Under Rev. Code 1919, Sec. 3479 (Prob. Code 1903, Sec. 317,) concerning distribution of realty not susceptible to division in kind, the commissioners were bound to appraise the land at its "true value;" and under that section the heir who took the property was bound to take it at its "true value;" and a valuation fixed by the commissioners at what the land could have been sold for at forced cash sale, which valuation trial court found was "the price said land was worth when sold at public sale for cash," was erroneous; court should have rejected report of commissioners, the "true value" being shown to have been $5 or $10 per acre above appraised value; following Richardson v. Howard, 33 S. D. 86, 120 N. W. 768.

Appeal from Circuit Court, Beadle County. HON. ALVA E. TAYLOR, Judge.

In the matter of the estate of Emma B. Ketcham, deceased. Upon final distribution of the estate, report of appraisal commissioners was confirmed by county court in favor of a private sale of the realty to Frank H. Ketcham, husband of deceased, and administrator of the estate and petitioner for final distribution, against the objection of Ella G. Anderson, an heir and other heirs. Upon appeal to circuit court judgment was entered confirming the judgment appealed from; from which judgment of the circuit court, and from an order denying a new trial, Ella G. Anderson, objector, appeals. Reversed, and trial court directed to enter judgment rejecting report of commissioners, reversing judgment of county court and remanding cause to latter court for further proceedings.

*Gardner & Churchill,* for Appellant.

*A. W. Wilmarth,* for Respondent.

(1) To point one of the opinion, Appellant cited:

Fleming v. Cardwell, (Ark.) 119 S. W. 654; 134 A. S. R. 40; McLaughlin v. Judge, (Mich.) 23 N. W. 472; Adkinson v. Rausdall, (Ky.) 20 S. W. 199.

(3) To point three of the opinion, Appellant cited:

30 Cyc. 258; Morrow v. Wipf, 22 S. D. 146; C. M. & St. P. v. Polt, 232 U. S. 165; 58 L. Ed. 554.

Respondent cited, re "oldest male heir"; Prob. Code, Secs. 80, 81, 82. Re notice; Richardson v. Loup, 80 Calif., 490 22 Pac., at 230.

(5) To point five of the opinion, Appellant cited:

Drake v. Drake, 27 S. D. 333; Richardson v. Howard, 23 S. D. 86; Sec. 317, 320, Prob. Code; Schroeder v. Young, 161 U. S. 337; 40 L. Ed. 721.

Respondent cited:

Jacksonville and S. Ry. Co. v. Walsh, 106 Ill., 253.

WHITING, J. Upon the final distribution of the estate of one Emma B. Ketcham, deceased, there were three quarter sections of land in Beadle county, S. D., to be partitioned among the heirs—Frank H. Ketcham, husband of deceased, Mrs. Ella G. Anderson, sister of deceased, and five nephews and nieces of the

deceased. The commissioners appointed to partition said property concluded that it could not be divided in kind. They appraised the land, made a report of such appraisal, reported that the husband was willing to accept the whole of said land and pay or secure its value, and they recommended the acceptance of his offer. This report was confirmed by the county court over the objection of Mrs. Anderson, and a decree made in accordance therewith. Upon appeal the circuit court made a like decree or judgment, and from such judgment and an order denying a new trial Mrs. Anderson has appealed.

Among other things appellant contends that the facts and circumstances revealed by the evidence disclose that there was perpetrated what constituted a fraud in law sufficient to require the setting aside of the judgment confirming the commissioners' report. Deceased and her husband were residents of Illinois, and the husband continued to reside there after her death. Mrs. Anderson resided in Beadle county. The other heirs were scattered in different parts of the United States—one living at Chicago, one in California, the address of one was unknown, and those of the others do not appear. The husband was the administrator of the estate. One W. was his attorney as administrator; also his attorney in his individual capacity, and the attorney of May H. Hill, and, as such, conducted for her all the negotiations and transactions to which she was a party. W. was a resident of Huron, and Miss Hill his stenographer. The board of commissioners consisted of three men, one of whom was a brother of Miss Hill; but there is no evidence to show that any one of these commissioners was influenced by any improper motive in what he did; neither is there any direct evidence that W. or Miss Hill was so influenced. We make our decision herein assuming that there was no fraudulent intent upon the part of either respondent, Ketcham, his attotrney, or Miss Hill. The commissioners met on November 15th with appellant the only heir present, determined that the lands could not be divided without prejudice and proceeded to and did appraise the several tracts. It is perfectly clear that, in making this appraisement the commissioners acted upon the supposition and belief that the land would be offered for sale; the question of its being set over to one

of the heirs was not in the minds of such commissioners, at least, until after the appraisement had been made. But we deem this fact not material. After the appraisement was made, W. advised the commissioners that the absent heirs, other than Mr. Ketcham, would not take the land and pay or settle for same. Appellant announced that she did not want it. W. then advised the commissioners that he would wire to respondent and ascertain if he desired to take it. Respondent was in Chicago. The commissioners made no report on the 15th but left the matter open, undoubtedly for further advice in relation to whether respondent would take the property. It is perfectly clear that none of the heirs, other than Ketcham and appellant, were ever advised as to the appraised value or given any opportunity, after knowing the appraised value, to determine whether he desired to take the property at its appraised or any other value. The source of W.'s information to the effect that the other heirs would not take the property, and upon what such information was based, does not appear. On November 16th, Ketcham wired W. that he would take the property, and, upon the same day, at Chicago, he acknowledged a deed conveying all said land to May H. Hill. On the 16th, W. wrote to at least two of the other heirs, one living in Chicago and the other in California, advising each that he was forwarding to a bank, subject to call, a check for a share of the proceeds upon distribution; and that such check would be delivered upon delivery to the bank of a quitclaim deed running to May H. Hill, "who is furnishing the money to Mr. Ketcham to purchase this property *in accordance with the partition decree.*" Parenthetically we would suggest, that it is not apparent how W. could know on the 16th that the commissioners would recommend setting over the land to Ketcham, and that the court would, by its decree, confirm such report—no decree was actually made for some time after November 16th. Each letter stated the price at which the land was appraised, the expenses of the partition, and the share that would come to such heir, and closed by advising that "under our statute, an interested party could take the whole of this land at the appraised value, *giving preference to the oldest male interested party.* Mr. Ketcham concluded to take it at the appraised value."

[1] From the above and other evidence, it is perfectly clear that, before the commissioners ever appraised this land, there had been some negotiations carried on between W. and Ketcham looking to the purchase of this land by Miss Hill, provided the appraisement was at a figure low enough to satisfy her—in other words, entirely unknown to the commissioners, there were negotiations afoot under which a party, not an heir, was to get this land at the appraised value and without a sale. But even if there had been no negotiations prior to the appraisement of this land, it stands absolutely undisputed that, as early as the 16th, such negotiations were had and an agreement reached under which this land would be set over, at the appraised value, to a stranger to the estate, and this without a public sale. On the 18th of November, without being in any manner advised as to the negotiations and transactions between respondent and Miss Hill, but after being advised that Ketcham elected to take the land, the commissioners filed their report. This report was prepared by W. and was signed by the commissioners under the belief on their part that Ketcham had the absolute right, as the oldest male heir, to take this property at its appraised value, and that therefore there was nothing for them to do but sign the report recommending the setting over of the property to Ketcham. That, under all the above facts, the decree, confirming the report and setting over the property to respondent, should be set aside upon the ground of fraud in law, is too clear to admit of argument. Counsel for respondent says:

"There was no conflict of interest between Frank H. Ketcham as administrator, Frank H. Ketcham personally, and May H. Hill."

[2] This is a novel proposition. As administrator it was the duty of Ketcham, in case the land was not divided in kind, to get every cent out of such land that was possible. Personally, if he thought there might be no division in kind, and believed that, as oldest male heir, he was entitled to take the land at the appraised value, he was directly interested in a low appraisement. Miss Hill was certainly interested in a low appraisement. Furthermore, it was the administrator's duty, upon the appraisement, to advise the commissioners of every fact affecting this transaction—a trustee

cannot be allowed to occupy inconsistent and antagonistic positions. It was his duty to reveal everything that in any way bore upon the merits of the appraisement, even though such revelation might be against his individual interests. That duty rested upon W. to the same extent as on the administrator. It was W.'s bounden duty, at the meeting on the 15th, to disclose all the negotiations that had then taken place, and he should have disclosed how much Miss Hill stood ready to pay for this land. We must remember that any information given W. by Miss Hill was information with which the administrator was charged. If the commissioners had been fully advised of the true facts, either on the 15th or the 18th of November, it is quite possible they would have returned a different report; certain it is, that if the commissioners had received the advice they should have received, Miss Hill's brother could not properly have joined in the report. We may also mention as a matter worthy of consideration that Miss Hill was the duly appointed resident agent of Ketcham, and, as such, received compensation from the estate and occupied a fiduciary relation thereto.

[3] Respondent also contends that, after the appraisement was made and respondent had expressed a willingness to take the land, no notice to the other heirs was necessary before the commissioners made their report recommending the setting over of the land to respondent, "because the statute states just what they must do under these circumstances, and such acts are only ministerial after the value has been fixed." In asserting such proposition respondent is clearly in error. Section 317, Probate Code (being section 3479, Rev. Code 1919), relied upon by respondent, does not give the oldest male heir preference, except as between children. Respondent was entitled to no preference as against the other male heirs, of which there were two. We do not deem it necessary to pass upon the constitutionality of the above-mentioned section; but, if constitutional, it was yet incumbent, after the appraisement, to advise the heirs of the values at which the several tracts had been appraised, and give each an opportunity, in the light of such appraisement, to determine whether he desired to take the land.

[4] Where trustees have failed to properly discharge their

duties, courts will not inquire as to whether such failure has resulted in actual fraud or in loss to a cestui que trust; but, as against the party in fault, will, in all cases, set aside the transaction wherein the trustee failed to fulfill his trust. It is sufficient, in this case, to require us to set aside the judgment appealed from, that the course pursued by Ketcham, acting through his attorney and by Miss Hill, acting through the same attorney, gave opportunity for the perpetration of a most grievous fraud on the court and on the other heirs.

[5] Upon the appraisal of the property the commissioners were bound, under said section 317, to appraise the land at its "true value"; and also, under such section, the heir who took the property was bound to take it at its "true value." The value fixed by the commissioners was the price at which, according to respondent's own witnesses, the land could have been sold at a forced cash sale; and the trial court found that the land was appraised at "the price which said land was worth when sold at public sale for cash." The trial court should have rejected the report of the commissioners, as the evidence of these witnesses showed that the "true value" was some $5 to $10 per acre above the appraised value. This court has held that there is a marked distinction between the term "full and true value" and the term "full and true cash value." Richardson v. Howard, 23 S. D. 86, 120 N. W. 768. The finding was insufficient to sustain the conclusions and judgment rendered.

The judgment appealed from is reversed, and the trial court directed to enter a judgment rejecting the report of the commissioners, reversing the judgment of the county court, and remanding the cause to the county court for further proceedings in harmony with this opinion.