## BOGGS & BUHL, Incorporated, v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Third Circuit.
September 23, 1929.

No. 4017.

Maynard Teall, W. A. Seifert, B. J. Jarrett, Karl W. Warmcastle, Smith, Shaw, McClay & Seifert, and McCook & Seifert, all of Pittsburgh, Pa., for petitioner.

Mabel Walker Willebrandt, Asst. Atty. Gen., and Sewall Key and Andrew D. Sharpe, Sp. Asst. Attys. Gen. (C. M. Charest, Gen. Counsel, and Shelby S. Faulkner, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. The question at issue in this case is the value of the good will of the petitioner at the time of its organization and purchase of its stock. It contends that the value was at least $1,000,000. The Commissioner says that it did not exceed $600,000. The United States Board of Tax Appeals held with the Commissioner, and the petitioner brought the case here for review.

The petitioner is a Delaware corporation, with its principal office and place of business

at Pittsburgh, Pa. In 1869 Russell H. Boggs and Henry Buhl, Jr., established a partnership in the dry goods business in that city under the firm name of Boggs & Buhl. In 1899 this partnership was changed to a New Jersey corporation, under the name of Boggs & Buhl, Inc. It was prosperous, catered to a very high class of trade, and had a good reputation.

In 1912 the May Department Stores Company acquired control of the Boggs & Buhl Company, and for the next three years sought a popular trade with cheaper prices. This departure from the business policy which had been pursued for years did not succeed, and in the fall of 1915, Messrs. Boggs and Buhl repurchased the stock from the May Department Stores Company, and on November 30, 1915, resumed active management of the business and as soon as possible disposed of the accumulation of goods called "seconds," "thirds," "left-overs," and other undesirable merchandise, which had accumulated during the May management, and returned to the policy of catering a high-class trade.

On May 8, 1916, Boggs & Buhl was incorporated under the laws of Delaware, with an authorized capital stock of $3,900,000, divided into 39,000 shares, consisting of 26,000 shares of 7 per cent. cumulative preferred stock and 13,000 shares of common stock. The par value of each class of stock was $100. Common stock of the value of $3,500 was issued at par for cash paid in. The Delaware company purchased all the assets of the New Jersey company of every kind for $3,-900,000 and paid for them as follows: $2,-600,000 in its 7 per cent. capital cumulative preferred stock, $1,296,500 in common stock of the company, and $3,500 in cash.

The transfer of the assets of the New Jersey corporation to the Delaware corporation was made on August 1, 1916. At this date no good will was carried on the books of the New Jersey corporation. Nor had any been carried on the books since 1905, when it wrote off $1,000,000 for good will. Upon taking over the assets of the New Jersey corporation, the Delaware corporation issued stock for $3,900,000. Of this amount $1,296,500 of common stock was issued for good will, and the value of the good will of the company is the question here.

Under section 326(a) (4) of the Revenue Acts of 1918 and 1921 (40 Stat. 1092; 42 Stat. 274), the petitioner was authorized to include in invested capital good will to an amount not exceeding the value thereof, or 25 per cent. of the par value of the stock outstanding March 3, 1917. The par value of

the stock of the Delaware company outstanding on this date was $3,900,000. Twenty-five per cent. of this amount is $975,000. The petitioner says that the value of the good will is more than $975,000, but it cannot include more in the invested capital, because of the inhibition of the statute, and in any event it should be allowed that much. The tax board, on the other hand, says that the good will of the company at the time it was acquired in 1916 had an actual cash value of at least $600,000, and the petitioner was entitled to include that amount in its invested capital for the years in question, of 1920, 1921, and 1922.

If the value of the good will was $1,000,-000 at the time it was acquired, $975,000, or one-fourth of the par value of the stock outstanding on March 3, 1917, is the maximum amount that may be included in invested capital on account of good will; but, if the good will had a value less than $975,000, that amount only may be included in invested capital for the taxable years in question. ▇ The value of the good will at the time it was acquired is a question of fact, and the finding of the board will be sustained, if there was any substantial evidence to support it. The value of the good will of this company was a matter of opinion, depending upon the interpretation of the facts in the case. A jury, commission, or board may not arbitrarily ignore or discredit the testimony of unimpeached witnesses, so far as they testify to facts, and a willful disregard of such testimony will be ground for a new trial; but the rule is different when witnesses testify merely as to their opinion. The jury or board may accept or reject this testimony, and reach a conclusion in accordance with its own knowledge, experience, and judgment. Idaho Power Co. v. Thompson (D. C.) 19 F.(2d) 547, 562; W. S. Bogle & Co., Inc., v. Commissioner (C. C. A.) 26 F.(2d) 771; Head v. Hargrave, 105 U. S. 45, 49, 26 L. Ed. 1028; The Conqueror, 166 U. S. 110, 17 S. Ct. 510, 41 L. Ed. 937.

The Commissioner denied that the good will of the petitioner at the time of its acquisition had any value whatever. The board, however, found that "the good will had an actual cash value of at least $600,000 at the time of acquisition." The board did not actually limit the value to $600,000, but it evidently meant to do so.

▇ All the direct and expert testimony as to the value of the good will was that it had a value of $1,000,000 and more. There is no direct testimony to the contrary. However, the testimony of the experts was as to their opin-

ion; but as they were men of wide business experience, acquainted with the business of the petitioner, and lived in Pittsburgh, their opinion was entitled to great weight and careful consideration. While the board may, as a general principle, reject expert testimony and reach a conclusion in accordance with its own knowledge, experience, and judgment, yet it must have knowledge of and experience with the particular subject under consideration. There is no evidence that the board had any independent and personal knowledge whatever of the business, reputation, and good will of the petitioner. Therefore it could not set aside or disregard all the positive and affirmative evidence as to the value of the good will, and base its conclusion upon conjecture. Midland Valley R. R. Co. v. Fulgham (C. C. A.) 181 F. 91, 95; De Ford v. Commissioner (C. C. A.) 29 F.(2d) 532. Consequently it should not have disregarded the only positive and direct evidence as to the value of the good will of the petitioner. Its order will accordingly be modified, and good will allowed to the extent of $975,000.

The petitioner contends that in any event, inasmuch as the board in its decision of April 16, 1928, found that the actual cash value of the good will of the company was $600,000 when its stock was acquired in 1916, effect should be given the decision for the years 1916, 1917, 1918, and 1919, and the value of the good will found should be added to the invested capital and decrease the taxes for those years. This would accordingly increase the invested capital for the years involved in this proceeding and decrease the taxes. If the petitioner did not like its taxes for those years, it should have paid them under protest and brought suit for a refund. This it did not do, and it may not now do indirectly what it should have done directly. This question was raised on objection to the proposed settlement and recomputation of the petitioner's tax liability for the years 1920, 1921, and 1922. In disposing of the objection the board said:

"Inasmuch as the invested capital and tax liability of the petitioner for the years 1918 and 1919 have never been made the basis of an appeal to this board, and inasmuch as the petitions filed in these proceedings have not put in issue the matter now in controversy, and inasmuch as a determination of this matter would require the reopening of the case for the introduction of evidence to show what the petitioner's correct invested capital and tax liability for the years 1918 and 1919 are, this objection of the petitioner is overruled."

This reopening of the case and the rede-termination of the invested capital and tax liability for these years was a matter within the discretion of the board, and we do not find that it abused its discretion. The order of the board as to this latter contention is affirmed, but it is modified as to good will, so as to allow a value of $975,000.