## WILLIAMS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8830.

Circuit Court of Appeals, Eighth Circuit.
Oct. 10, 1930.

Rehearing Denied Dec. 13, 1930.

GARDNER. Circuit Judge, dissenting.

Paul E. Shorb, of Washington, D. C. (F. H. De Groat, of Duluth, Minn., and M. P. Wormhoudt and Covington, Burling & Rublee, all of Washington, D. C., on the brief), for appellant.

Randolph C. Shaw, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key and John H. McEvers, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Percy S. Crewe, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellee.

Before KENYON, BOOTH, and GARDNER, Circuit Judges.

BOOTH, Circuit Judge.

This is a petition to review an order of the Board of Tax Appeals which redetermined the deficiency of the petitioner's income tax for the year 1925. The facts leading up to the order are substantially as follows: Petitioner is a resident of Duluth, Minn. November 4, 1918, his wife died testate, leaving an estate which included among

its assets 827 shares of the capital stock of the Red Cliff Land & Lumber Company, Limited (herein called the Red Cliff Company), of which the petitioner received as his share 275⅔ shares. The Red Cliff Company prior to April, 1918, was the owner of large timber tracts in Canada. At that time it sold its holdings to the Alberni-Pacific Lumber Company, Limited (herein called the Alberni-Pacific Company), in exchange for 24,000 shares of the latter's capital stock; and these shares constituted the assets of the Red Cliff Company on November·4, 1918. The Alberni-Pacific Company acquired and owned a logging plant, for which it issued 6,000 shares of its capital stock. These land holdings and this logging camp constituted the assets of the Alberni-Pacific Company. At the time of the death of Mrs. Williams the capital stock of the Red Cliff Company had no market value; but the probate court of St. Louis county, Minn., in the administration of the estate found that the stock of the Red Cliff Company was worth $194.64 a share. This finding was based upon an appraisal made by two appraisers appointed by said probate court, and the appraisal was based, in part at least, upon reports which had been made by cruisers and engineers of the company.

This valuation of the stock of the Red Cliff Company was adopted by the executors of the will of Mrs. Williams in making their return of the value of the stock for federal estate tax purposes.

The shares which the petitioner received of the Red Cliff Company he surrendered later to the liquidating committee of that company, and received in exchange 1,653 shares of the stock of the Alberni-Pacific Company. In 1925 the petitioner sold all his shares of this stock for $131,413.50, of which $69,426 was paid in cash, and $61,987.50 was paid in bonds of the purchasing corporation. The face value of the bonds was $68,875. The purchasing corporation was the new Alberni-Pacific Company, and had been organized to take over the properties of the old company of that name.

The petitioner in making his income tax return for the year 1925 set up the cost of the stock of the Red Cliff Company on the basis of the 1918 appraised value above given, and on this basis the sale in 1925 reflected a gain of $69,426. An amended return was put in by the petitioner, in which he set up the cost of the Red Cliff stock on a different basis; and on this amended basis the sale in 1925 reflected a loss of $22,067.55; and he accompanied his amended return with a claim for refund in the amount of the difference between the income tax as shown by the original return and as shown by the amended return. The amount of this difference was $4,497.17. This claim was disallowed by the commissioner, and a deficiency in the income tax of petitioner was found in the sum of $346.59. This conclusion of the commissioner was affirmed by the Board of Tax Appeals. The present appeal followed.

One of the contentions of petitioner is that the Board of Tax Appeals failed to make any finding as to the fair market value of the stock of the Red Cliff Company in 1918, the date when petitioner acquired it, and that therefore there is no basis for the order made by the board redetermining the deficiency.

We think this contention cannot be sustained. It is true that the Board of Tax Appeals in its findings of fact does not state specifically that the fair market value of the stock of the Red Cliff Company in November, 1918, was $194.64 per share. But it does find that this was the valuation fixed by the probate court in accordance with the laws of the state of Minnesota for estate and inheritance tax purposes, and that this figure was adopted by the executors of the estate in making return for federal estate tax purposes. It also redetermines the tax deficiency at exactly the same figure as the commissioner, who had adopted the valuation above mentioned and had based his deficiency figure thereon. Under these circumstances we think it would be hypercritical to hold that the Board of Tax Appeals had made no finding of valuation of the stock.

But this is not all. Article 1594(b) of Regulation No. 65 (October 6, 1924) of the Treasury Department relating to income tax reads, in part, as follows:

"In the case of property acquired by bequest, devise, or inheritance its value as appraised·for the purpose of the Federal Estate tax or in the case of estates not subject to that tax, its value as appraised in the State court for the purpose of State inheritance taxes shall be deemed to be its fair market value when acquired."

These regulations have the force and effect of law when not in conflict with statutory provisions on the same subject-matter. United States v. Eaton, 144 U. S. 677, 12 S. Ct. 764, 36 L. Ed. 591; United States v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563; Maryland Cas. Co. v. United States, 251 U. S. 342, 349, 40 S. Ct. 155, 64 L. Ed.

297; Daeuffer-Lieberman Brewing Co. v. United States (C. C. A.) 36 F.(2d) 568.

In the case at bar we find no conflict between the regulation quoted and the statutory provision, section 204(a)(5) of the Revenue Act of 1926, 26 USCA § 935(a)(5) reading as follows:

"Sec. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that— *   *   *

"(5) If the property was acquired by bequest, devise, or inheritance, the basis shall be the fair market value of such property at the time of such acquisition."

Giving effect, therefore, to the regulation provision, it is clear that the finding of the Board of Tax Appeals relative to the appraised value of the stock for the purpose of the federal estate tax is a finding of its fair market value when acquired by appellant.

Another contention of petitioner is that the Board of Tax Appeals in making its findings and conclusions proceeded on an erroneous theory of law, viz.: That the board was bound to approve the valuation of the commissioner unless the presumption in favor of its correctness was overcome by convincing proof by the petitioner.

We shall not undertake to follow counsel for petitioner in their discussion as to the theoretical status of presumptions in the law of evidence. It will suffice to ascertain whether the rulings and action of the Board of Tax Appeals relative to the evidence in the instant case were in accord with well-established principles.

Rule 30 of the Board of Tax Appeals reads as follows:

"Burden of Proof.—The burden of proof shall be upon the petitioner, except that in respect of any new matter of fact pleaded in his answer, it shall be upon the respondent."

This rule has been enforced by the board in numerous cases. Appeal of J. M. Lyon, 1 B. T. A. 378; Helen Pitts Parker v. Com'r of Internal Revenue, 14 B. T. A. 1185, 1197. And similar holdings have been made by the courts. Brown v. Com'r (C. C. A.) 22 F. (2d) 797; Avery v. Com'r (C. C. A.) 22 F. (2d) 6, 55 A. L. R. 1277; Bishoff v. Com'r (C. C. A.) 27 F.(2d) 91; Coon Auto Co. v. Com'r, 35 F.(2d) 504 (C. C. A. 8); Wickwire v. Reinecke, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184; Reinecke v. Spalding, 280 U. S. 227, 50 S. Ct. 96, 74 L. Ed. 385.

The presumption in favor of the commissioner's finding may be overcome by evidence. Walter R. McCarthy, Ex'r, v. Com'r of Internal Revenue, 9 B. T. A. 525; United States v. Rindskopf, 105 U. S. 418, 26 L. Ed. 1131; Wickwire v. Reinecke, supra; Reinecke v. Spalding, supra; Coon Auto Co. v. Com'r, supra; Fidelity & Columbia Tr. Co. v. Lucas (D. C.) 7 F.(2d) 146.

The value at which securities are returned for estate tax purposes is prima facie the value for the purpose of computing gain or loss on subsequent sale. Article 1594(e) of Regulations No. 65, supra; Appeal of Elizabeth J. Bray, 4 B. T. A. 42.

With these principles in mind, let us examine the procedure in the case at bar. Petitioner offered a considerable amount of evidence in an endeavor to prove that the fair market value of the Red Cliff Company stock in November, 1918, was greater than $194.64 per share. The appraisers in the probate court in arriving at this value per share of stock had used as a basis stumpage value of the timber owned by the Red Cliff Company at $1 per thousand. The evidence introduced by petitioner before the Board of Tax Appeals was almost entirely directed to the stumpage value of the timber in November, 1918. Testimony of experts in the lumber business was received tending to show that the stumpage value was as high as $2 per thousand. This testimony of the experts was of two kinds: (1) Their opinions based upon their personal knowledge of the timber on the lands in question or nearby lands; (2) their opinions based upon an alleged sale in 1911 of the timber on the very lands in question, and their knowledge of any changes in value between 1911 and 1918.

It is the contention of petitioner that all of this expert testimony was stricken from consideration or held to be of no weight by the Board of Tax Appeals on the erroneous legal theory above mentioned. We think the record does not bear out this contention. We find nothing in the opinion of the Board of Tax Appeals or elsewhere in the record to indicate that the expert testimony of the first class was not considered and given due weight. As to the expert testimony of the second class, there are expressions in the opinion of the Board of Tax Appeals which indicate that it was accorded but little, if any, weight. Such ruling, if one was made, was not without reasonable basis. In the first place, the sale was remote—seven years prior to the date at which the valuation was to be fixed. This infirmity was attempted to be

cured by testimony that the value of stumpage had changed little, if any, during the seven-year period. In the second place, the alleged sale itself was of doubtful character. While sales of land are not infrequently held to be evidence of value of the land, the sales so contemplated are completed sales, i. e., where the consideration is paid. In the sale in question the consideration was only partly paid and the purchase contract was then abandoned by both parties. Such a situation has many of the infirmities of a mere offer to buy. See Sharp v. United States, 191 U. S. 341, 24 S. Ct. 114, 48 L. Ed. 211.

In addition to all this, it must be borne in mind that this method of ascertaining the value of the stock of the Red Cliff Company was at best an indirect one. The testimony thus offered was not as to the value of the stock, but as to the value of the assets of the corporation which had issued the stock. The value per share of corporate stock can seldom be found by dividing the value of the assets by the number of shares. Many other considerations enter; among them, the liabilities, the outstanding contractual obligations, the character of the management, whether the market for such assets is active, sluggish, or sporadic. In view of these uncertain elements, not rendered certain by any evidence on the part of petitioner, and in view of the very doubtful probative value of the alleged sale and the testimony of the experts based thereon, we think it was not reversible error on the part of the Board of Tax Appeals to exclude such evidence from consideration.

■ Another contention of petitioner is that the introduction of any substantial evidence by petitioner caused the presumption in favor of the commissioner's finding to disappear, and that apart from this presumption there was nothing on which to base the findings and conclusion of the Board of Tax Appeals. We think this contention is based upon a misapprehension of the evidence contained in the record. There was evidence before the board tending to establish the fact that a valuation had been fixed on the stock of the Red Cliff Company by the probate court in 1918 after an appraisal; tending to establish the further fact that this valuation had been adopted by the petitioner in making return for the federal estate tax on his wife's estate; tending to establish the further fact that the valuation so fixed was correct according to the best of petitioner's judgment in 1918. This was substantial evidence and was considered by the Board of Tax Appeals along with the other evidence not excluded.

The view of the board after such consideration is thus expressed in the opinion filed:

"On the whole, the evidence before the Board tends to support the findings of the Probate Court as being the nearest approach to a true valuation for said stock on November 4, 1918, that could be made under conditions existing at that time. The action of the respondent in respect of his determination of the value of this stock is approved."

It is the well-established rule that if there is any substantial evidence to support a finding of the Board of Tax Appeals, such finding will not be disturbed. The following cases announce the rule in the Eighth Circuit: Mastin v. Com'r (C. C. A.) 28 F.(2d) 748; Denver Live Stock Comm. Co. v. Com'r (C. C. A.) 29 F.(2d) 543; Kendrick Coal & Dock Co. v. Com'r (C. C. A.) 29 F.(2d) 559; Conklin-Zonne-Loomis Co. v. Com'r (C. C. A.) 29 F.(2d) 698; Feeders' Supply Co. v. Com'r (C. C. A.) 31 F.(2d) 274; Powers Mfg. Co. v. Com'r (C. C. A.) 34 F.(2d) 255.

■ Error is also assigned as to the exclusion of certain testimony by the witness Scanlon. This matter is not properly before us for consideration, inasmuch as no offer to prove was made. Such offer was necessary whether we give effect to the rule of evidence apparently governing the Board of Tax Appeals (Revenue Act 1926, § 907(a), 26 USCA § 1219(a); McCurley v. Nat. Sav. & Tr. Co., 49 App. D. C. 10, 258 F. 154), or to the rule in this circuit [Federal Sur. Co. v. Standard Oil Co. (C. C. A.) 32 F.(2d) 119]. Furthermore, later in the trial the witness Scanlon was allowed to answer questions of the same general import.

■ Petitioner finally contends that the Board of Tax Appeals erred in its method of computing the sales price of the stock of petitioner in the Red Cliff Company. The board held that the "sales price" was the value of the bonds and cash received; that the "cost" of the stock was the fair market value in November, 1918; that the gain was the difference between the two, but that the gain to be recognized was limited by the amount of cash received in accordance with section 203(d)(1) of the Revenue Act of 1926, 26 USCA § 934(d)(1), reading as follows:

"Sec. 203. * * * (d)(1) If an exchange would be within the provisions of paragraph (1), (2), or (4) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be re-

·ceived without the recognition of gain, but also of other ·property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property."

The petitioner argues that in computing the "sales price" the value of the bonds received should be entirely eliminated, because under the statute if petitioner had exchanged his stock solely for bonds no gain or loss could be recognized, as provided by section 203(b) (2), 26 USCA § 934(b) (2) reading as follows:

"Sec. 203. * * * (b) * * * (2) No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

And that paragraph (d)(1) of the same section is to be construed in harmony with paragraph (b)(2); and when so construed it means that "no gain shall be recognized to the extent of 'property' received which is permitted by that paragraph, but if 'other property' or money is also received then a gain shall be recognized in respect of such 'other property' and money."

We think this argument of petitioner is based upon a confusion of the statutory provisions relating to the *computing* of gain or loss with the provisions relating to the *recognizing* of gain or loss. The sections establishing the method of computing the gain or loss are sections 202 and 204 (26 USCA §§ 933, 935). Whether such gain or loss shall be recognized after it has been computed, and to what exent, depends upon section 203 (26 USCA § 934), the opening sentence of which reads:

"(a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202, shall be recognized, except as hereinafter provided in this section."

Certain parts of section 203 provide that no gain or loss shall be recognized in specified cases, e. g., subdivision (b) paragraphs (1), (2), (3), (4), (5); subdivision (c); subdivision (e) paragraph (1). Other parts of section 203 provide that a portion only of the gain shall be recognized, e. g., subdivision (b) paragraph (5); subdivision (d) paragraphs (1), (2); subdivision (e) paragraph (2). Subdivision (f) provides for cases in which no loss shall be recognized, additional to the cases covered by subdivision (b) para-

graphs (1), (2), (3), (4), (5). In none of these subdivisions [(b), (c), (d), (e), (f)] of section 203, however, is there any method provided or suggested for ascertaining gain or loss other than the method provided in sections 202 and 204.

The language of these two sections is simple. Section 202 (26 USCA § 933) so far as here material, reads as follows:

"Sec. 202. (a) Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in subdivision (a) or (b) of section 204, and the loss shall be the excess of such basis over the amount realized. * * *

"(e) The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received."

Section 204 (26 USCA § 935), so far as here material, reads as follows:

"Sec. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that— * * *

"(5) If the property was acquired by bequest, devise, or inheritance, the basis shall be the fair market value of such property at the time of such acquisition."

And as if to set at rest the proposition that section 203 relates solely to the *recognition* of gain or loss and not to the *determination* or *computation* thereof, section 202(d), 26 USCA § 933(d) provides:

"(d) In the case of a sale or exchange, the extent to which the gain or loss *determined under this section* shall be recognized for the purposes of this title, shall be determined under the provisions of section 203." (Italics ours.)

We think the Board of Tax Appeals correctly computed the gain in accordance with the provisions of sections 202 and 204, and correctly limited the gain to be recognized as taxable in accordance with the provisions of section 203(d)(1). There is no showing that petitioner was taxed on any gain in excess of the cash received.

Our conclusion is that the order of redetermination of the Board of Tax Appeals should be affirmed, and it is so ordered.

472

GARDNER, Circuit Judge (dissenting).

The facts and issues presented by the petition for review in this case have been quite fairly and succinctly stated in the opinion of Judge Booth. There are two issues: (1) What was the fair market value of the stock inherited by the petitioner, on November 4, 1918; and (2) was the method employed by the Commissioner of Internal Revenue in computing the tax a proper method?

It is conceded, as noted in the foregoing opinion, that the stock was not a listed stock and had no regular market value in the primary sense. It was therefore proper to resort to the value of the assets of the corporation and its indebtedness for the purpose of determining the market value of the stock. Arneson v. Nerger, 34 S. D. 201, 147 N. W. 982; Muck v. Hayden, 173 Mo. App. 27, 155 S. W. 889; White v. Jouett, 147 Ky. 197, 144 S. W. 55; Collins v. Denny Clay Co., 41 Wash. 136, 82 P. 1012. The assets of the corporation consisted of stock in another corporation whose only property was certain timber lands, so that ultimately the question is dependent upon the value of these timber lands. The solution of this question is dependent upon the volume or amount of timber and its quality. The question is also affected by the amount of the indebtedness of the corporation. It is to be observed that both parties agree as to the volume of the timber, and neither is there any dispute as to the character and quality of the timber nor as to the amount of the corporation's indebtedness, so that the only disputed question of fact is the stumpage value per thousand on November 4, 1918.

The commissioner, in determining the value of this stock, accepted and adopted the appraisal made by the probate court of St. Louis county, Minn., in the matter of the estate of Elizabeth B. Williams, deceased, wife of the petitioner. The commissioner in his report states that: "The appraisal made by the appraiser appointed by the Probate Court of St. Louis County, Minnesota, was entered on Form 706 Federal Estate Tax Return. The return was examined by Revenue Agent Hall in 1920. He made no change from the amount returned, nor was it subsequently changed by the Bureau. It may also be stated that the appraisal had been based on cruises made by the corporation, and same were satisfactory to the executors and the Revenue Agent." This report contains the following pertinent statement:

"Statement of Alberni-Pacific Co. as at November 4, 1918:

| | |
|---|---|
| Timber estimated 1,173,204,000 feet, equals 1,173,204 thousand. Value $1.00 per thousand ................. | $1,173,204.00 |
| Less debts of Alberni-Pacific Co. ..................... | 75,000.00 |
| Valuation of A-P stock.. | $1,098,204.00 |
| 80% owned by Red Cliff Land & Timber Co. is........... | 875,563.20 |
| Less indebtedness of Red Cliff Co. .................... | 100,000.00 |
| Valuation of 4000 shares of the Red Cliff Land & Lumber Co. stock................. | 778,563.20 |

Value per share is $194.64. .."

Before the Board of Tax Appeals, the petitioner offered testimony of expert timbermen who were familiar with values of timber of this character in the locality where this timber was located. Referring to this testimony the board in its decision says:

"A great deal of testimony was presented by petitioner of expert timbermen who were familiar with values of properties similar to these which composed the bulk of the assets of these corporations, but none of the witnesses had ever seen these properties or claimed to have any personal knowledge of their value. The petitioner sought to establish a value for the timber properties by introducing in evidence the contract of sale of them made in 1911 with the Von Alvensteben Company for the expressed consideration of $2,228,700 and treating this fixed sum as their true market value in 1911. He then attempted to establish their value as of November, 1918, by testimony of expert witnesses to the effect that values of like properties, once established, rarely receded or diminished. The infirmity of this evidence, aside from its novelty and remoteness, is that it is based upon a false hypothesis, in assuming that the figure expressed in the Von Alvensteben contract is any evidence whatever as to the value of the property at that time. The transaction provided for in that contract was an installment sale in which the purchase price was payable in amounts spread over a period of five years. In these circumstances the actual price received by the seller was not the sum total of the payments provided in the contract, but the cash paid, plus the value of the contract itself at date of sale."

The board seems to have swept aside all the testimony produced by the petitioner as to value and accepted the findings of the pro-

·bate court. In the course of the opinion of the board it is said with reference to this valuation fixed by the probate court of St. Louis county, Minn.:

"This valuation was adopted by the respondent in determining the profit to petitioner from the sale and this finding we are bound to approve unless the presumption in favor of its correctness is overcome by convincing proof presented by the petitioner."

I think it important to bear in mind that there is no dispute as to the estimated volume of timber. Neither is there any dispute as to the character and quality of this timber. The commissioner concluded that on November 4, 1918, it had a reasonable market value of $1 per thousand stumpage, while the petitioner contends that it was worth $2 per thousand. The inquiry on this question is therefore quite a limited one, to wit: What was the market value per thousand feet of this potential lumber November 4, 1918? On this question the evidence shows that the timber was well located and accessible for logging operations; that the largest boats afloat could land near the timber and the tract was heavily timbered, running largely to fir. Approximately 90 per cent. of this timber land was crown grant land, and hence not subject to license fees or dues as were ordinary lands.

The witness Scanlon, eminently qualified to speak on the subject of timber values, as he had operated in the immediate location of these lands, testified that the timber consisted largely of fir, hemlock, and spruce. Companies with which he was connected, and in which he was an owner, owned timber in practically all sections of British Columbia, and he had a general knowledge of the timber on these lands and of timber generally throughout the whole area of Vancouver Island and British Columbia. He testified that in 1918 this timber was worth at least $2 per thousand. He testified to the sale of the Humbird tract of 300,000,000 feet of crown grant lands in Vancouver, which was purchased in 1908 at $1.50 per thousand feet. Adjoining this tract was a tract designated as block 1369 in which he was interested, and the federal government placed a value of $1.50 per thousand feet on this tract as of March 1, 1913, and in 1920 it sold for $2.50 per thousand feet. He also referred to a tract as block 75, shown in the record and by map, in which he was interested, which contained 650,000,000 feet in Vancouver Island, and this was valued by the federal government March 1, 1913, at $1.75 per thousand. He also testified that the cost of logging the Alberni-Pacific would be considerably cheaper than the cost of logging this block 75.

Another witness, Thomas D. Merrill, thoroughly qualified as an expert timberman, who was an officer of numerous British Columbia timber companies with an annual output of 150,000,000 feet and whose operations were largely in his hands, testified that timber lands in British Columbia ran largely to fir and that it was the predominate type of timber in that country; that fir, cedar, and spruce were of about the same value; that the timber lands were of one general type and much the same in character in that district. He testified to a sale of a tract of 60,000,000 feet in 1918 at $2.50 per thousand, consisting mostly of fir, which, as he says, is the predominate type in Vancouver Island and British Columbia.

The witness Frank A. Brewer, who had cruised timber in many states and in British Columbia during thirty-five years, testified to a tract designated as the Royce tract in British Columbia of 800,000,000 feet of timber. This was licensed land, subject to a royalty of 75 cents per thousand, and this tract sold for $1 per thousand in 1922, which with the royalty would make it cost in excess of $1.75 per thousand.

On the sale of this timber land to the Von Alvensleben Company, there was actually paid on the purchase price $1,074,089.37, and the purchase price was in excess of $2 per thousand. Experienced timbermen all testified that the timber was worth as much November 4, 1918, as it was at the date of this sale. There could be no doubt of the bona fides of this sale, but the board said in effect that it was no evidence whatever as to the value of the property. The sales above referred to occurred in 1908, 1918, 1920, and 1922, and it is observed that the March 1, 1913, values placed on this British Columbia and Vancouver Island timber by the federal government range from $1.50 to $1.75 per thousand feet. It seems to me that the evidence of these sales of similar tracts of nearby timber conclusively shows that the value of this timber in 1918 was approximately $2 per thousand feet and that there is no substantial evidence in the record to sustain the valuation fixed by the commissioner and the board.

It is apparent that the board wholly disregarded the evidence as to the sale of the property in 1911. What is said by this court in North American Telegraph Co. v. Northern Pacific Ry. Co., 254 F. 417, 418, in a case heard before Judges Hook, Carland, and Am-

idon, is here pertinent. Referring to the term "market value," it is there said:

"The term is, however, frequently used in a figurative sense, as meaning the fair or reasonable value of the property—that is, such a value as the property would have if it were dealt in according to the practices of a market overt. This is the meaning which the term usually has when applied to real property. To prove market value when it is used in this secondary or figurative sense, it is proper to receive evidence of individual transactions, even offers made in good faith for property of like character, the nature of the property, its location, its rental value, the uses to which it can be put, and all the manifold elements which are admissible to show the fair and reasonable value of property which is not so traded in as to give it a market value in the primary sense of the term."

It is apparent also that the board erroneously took as its standard a cash value and not the market value. Dady v. Condit, 209 Ill. 488, 70 N. E. 1088; Anderson v. Ketcham, 41 S. D. 515, 171 N. W. 764; Richardson v. Howard, 23 S. D. 86, 120 N. W. 768. The market value of property of this character would be such price as property of this sort would ordinarily bring on usual terms, and it cannot be said that there was anything unusual about the terms of sale, and the sale has every indication of being in good faith, as very substantial payments of money were made on the contract.

I think, too, that it is quite apparent that the board gave controlling effect to the findings of the probate court which were adopted by the commissioner. In the opinion it is said:

"This finding we are bound to approve, unless the presumption in favor of its correctness is overcome by convincing proof presented by the petitioner."

The board falls into the error of weighing presumption against evidence. Where statutes provide that on proof of an accident a presumption of negligence arises, the courts have universally held that when, under such circumstances, the defendant proves its freedom from negligence, the presumption of law disappears, and there is no issue to submit to the jury. It is a recognized principle of evidence that presumption is not evidence, and cannot be weighed in the balance with evidence. Lincoln v. French, 105 U. S. 614, 26 L. Ed. 1189; Western R. R. Co. v. Henderson, 279 U. S. 639, 49 S. Ct. 445, 73 L. Ed. 884; Peters v. Lohr, 24 S. D. 605, 124 N. W. 853.

On the one factor on which there was any controversy, to wit, the value per thousand feet of lumber, the evidence on behalf of the petitioner is overwhelming, if, indeed, not uncontradicted, and hence I am inclined to the view that the valuation as found is not sustained by substantial evidence and is the result of a misapprehension as to the law applicable to the facts, and should be set aside. Boggs & Buhl, Inc., v. Commissioner (C. C. A.) 34 F.(2d) 859, 860; Chicago Ry. Equipment Co. v. Blair (C. C. A.) 20 F.(2d) 10, 12. What is said in the opinion in Boggs & Buhl, Inc., v. Commissioner, supra, is apposite. It is there said:

"All the direct and expert testimony as to the value of the good will was that it had a value of $1,000,000 and more. There is no direct testimony to the contrary. However, the testimony of the experts was as to their opinion; but as they were men of wide business experience, acquainted with the business of the petitioner, and lived in Pittsburgh, their opinion was entitled to great weight and careful consideration. While the board may, as a general principle, reject expert testimony and reach a conclusion in accordance with its own knowledge, experience, and judgment, yet it must have knowledge of and experience with the particular subject under consideration. There is no evidence that the board had any independent and personal knowledge whatever of the business, reputation, and good will of the petitioner. Therefore it could not set aside or disregard all the positive and affirmative evidence as to the value of the good will, and base its conclusion upon conjecture. Midland Valley R. R. Co. v. Fulgham (C. C. A.) 181 F. 91, 95; De Ford v. Commissioner (C. C. A.) 29 F.(2d) 532. Consequently it should not have disregarded the only positive and direct evidence as to the value of the good will of the petitioner. Its order will accordingly be modified, and good will allowed to the extent of $975,000."

In Chicago Ry. Equipment Co. v. Blair, supra, it was urged that the taxpayer was required to adduce convincing evidence of error and that the rule went further than the ordinary rule as to burden of proof. In considering this contention, the court said:

"Of course, every trier of fact should decide cases upon a conviction reached from a consideration of the evidence, and clearly evidence that produces such conviction must be satisfactory and convincing; but it is a well-known rule of law that triers of fact must be satisfied and convinced, if the evidence ad-

duced, fairly considered, preponderates for or against a given proposition. When the evidence before a trier of fact ought to be convincing, he may not say that it is not. Whether he is a judge or a commissioner, the facts must be fairly and judicially weighed, and a determination reached thereon."

The method of computing the tax is also an issue. On the sale of the stock, Williams received from a corporation organized for the purpose of taking over the holdings of the company, part cash and the balance in bonds of that company. I am of the view that that part of the consideration represented by the bonds was not subject to a tax. Section 203 of the Revenue Act of 1926 (26 USCA § 934) provides that no gain or loss shall be recognized if stock or securities in a corporation a party to reorganization are in pursuance of the plan of reorganization, accepted solely for the stock or securities of such corporation or in another corporation, a party to the reorganization. Manifestly, had Williams taken all bonds, no loss or gain should have been recognized; but it is contended that both the cash and the bonds received are on the same basis because of the provisions of paragraph (d)(1), which reads as follows:

"(d)(1) If an exchange would be within the provisions of paragraph (1), (2), or (4) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property."

The board has construed the bonds as "other property." Now, it appears that the transaction was in effect an exchange of all of the stock of all of the stockholders of the old company, whereby they received approximately one-half in money and one-half in bonds issued by the new or reorganized company. So far as the bonds were concerned, they would not, it seems to me, constitute "other property." Under the ruling of the Tax Board in this case, if one should exchange his stock valued at $100,000 in one company for $1 in cash and $99,999 in stock or bonds of the new or reorganized company, then he would have to account for the stock or bonds as "other property"; but if he accepted stock or bonds of the value of $100,000, he would not have to account for any gain. I am inclined to the view that no such absurdity was intended by this statute, and that the words "other property" should be construed to mean property other than the stock or bonds of the reorganized company. As to such property there has been no liquidation. It simply continues in the same business in a different form. This construction would seem to give effect to the intent of the legislation and would be consistent with the other provisions of the act.

I am therefore of the view that the decision of the Board of Tax Appeals should be reversed.