George R. Beggs and Frances Beggs v. Commissioner.
Beggs v. Commissioner
Docket Nos. 78771, 79715.
United States Tax Court
T.C. Memo 1961-127; 1961 Tax Ct. Memo LEXIS 224; 20 T.C.M. (CCH) 626; T.C.M. (RIA) 61127; May 8, 1961
*224 Held, petitioner did not receive a dividend of $40,000 in the taxable year 1954, when the corporation cancelled an accounts receivable owing from petitioner and authorized the receipt of 400 shares of stock as treasury stock, or in the taxable year 1955, when the stock was actually received. *225 Sidney J. Matzner, Esq., 3450 Wilshire Blvd., Los Angeles, Calif., for the petitioners. Thomas J. Sullivan, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: Respondent determined deficiencies in income tax of the petitioners, as follows: Year
Deficiency
1954
$18,222.02
1955
19,438.72
The sole issue is whether petitioner George R. Beggs received a taxable dividend in the amount of $40,000, and if so, whether in the year 1954, when the directors altered the corporate records to cancel the accounts receivable owing from him and to retire 400 shares of stock, or in the year 1955, when the stock was actually given to the corporation. Most of the facts were stipulated and are incorporated herein by this reference. The petitioners, George R. and Frances Beggs, are husband and wife residing in Bakersfield, California. They filed joint income tax returns for the taxable years 1954 and 1955 with the district director of internal revenue at Los Angeles, California. Since Frances Beggs is a petitioner herein only by virtue of having filed a joint return with her husband, the latter will hereinafter sometimes be referred *226 to as petitioner or Beggs. Petitioner and Thomas F. Thompson, hereinafter sometimes referred to as Thompson, formed a partnership on August 12, 1941, styled Empire Transportation Company, for the business of hauling petroleum products. Beggs and Thompson were equal partners, but Thompson was a "silent partner." In March 1946 the partners agreed to dissolve the partnership. The dissolution agreement provided that the partners acquiesced in a transfer of the partnership assets by Beggs to a corporation to be formed for the purpose. According to the "plan" and "understanding" mentioned in the dissolution agreement, all the shares of stock of the projected corporation (George R. Beggs, Inc., changed on August 13, 1948, to Empire Transportation Company, hereinafter referred to as the corporation), were to be issued initially to petitioner in his own right and as nominee of Thompson. This approach was adopted because Thompson had formerly been an employee of the Union Oil Company, with which the partnership had, and the corporation would continue to have, business dealings. Although Thompson was not an employee at the time of the dissolution and the formation of the corporation, it *227 was thought unwise to disclose the past relationship or association. It was the agreement of the parties that Thompson was to be made record holder of half the stock held initially by petitioner, as his nominee. Petitioner was not personally purchasing the assets of the partnership. On April 10, 1946, petitioner offered the partnership assets to the corporation, and on June 12, 1946, the corporation accepted the offer and transferred 997 shares of its stock to petitioner, 2 shares to Louis Jacobson, and 1 share to Chloe Merrill. The relationship between Beggs and Thompson seriously deteriorated and a dispute arose between them regarding their interests in the corporation. Thompson had never been made record holder of his share of the corporation's stock. On January 8, 1948, petitioner, Thompson, and the corporation entered into an agreement resolving their differences regarding the respective interests of Thompson and petitioner in the corporation and Tri-State Oil Company, another and distinct partnership between petitioner and Thompson. This agreement recited that (1) the parties had agreed to the dissolution of the partnership and the subsequent transfer of the assets to *228 the corporation; (2) Beggs had agreed to compensate Thompson for his share of the partnership assets; (3) a dispute had arisen as to the method of compensation, Thompson alleging that he was entitled to the stock and Beggs denying it; and (4) the agreement was to settle and compromise their differences. According to the document, the parties also agreed that Thompson was to receive $40,000 cash, payable $25,000 cash upon the execution of the agreement and the balance of $15,000 in three yearly installments of $5,000 plus interest. It was understood among the parties that the primary obligation rested with the corporation, and petitioner was to act only as a guarantor. The agreement further recited that Thompson released all his claims to the partnership assets and released any claim to stock of the corporation. At the time of the settlement with Thompson on January 8, 1948, the corporation had an earned surplus of $26,928.95. On or about January 9, 1948, the corporation issued its check for $25,000 to petitioner, and on the same date petitioner issued a check to Thompson in the amount of $25,000. Some 19 days later the corporation issued another of its checks to petitioner *229 in the amount of $16,000, and on the same day petitioner issued a check to Thompson in the amount of $15,036.90. This method of paying Thompson was adopted because the parties were under the erroneous impression that a corporation could not at that time redeem its own stock. To be on the safe side, the petitioner acted as a conduit through which the payment flowed. This created the illusion and semblance of a loan and a purchase by petitioner of the stock rather than a direct redemption by the corporation. There was no indebtedness running from petitioner to the corporation. On December 17, 1954, the corporation, at a meeting of its directors, voted to make certain adjustments in its records. The adjustments, as set forth in the minutes, are as follows: The chairman [petitioner] stated that on or about January 8, 1948, an agreement had been entered into with T. F. Thompson, one of the partners in "EMPIRE TRANSPORTATION COMPANY", which was the predecessor of this corporation, wherein and whereby the said T. F. Thompson agreed to sell his interest in and to said partnership and/or in and to a stock interest in this corporation; that the reason for the said agreement was a disagreement *230 as to the value of his interest in and to this corporation which resulted from the incorporation of said partnership; that this corporation and GEORGE R. BEGGS were jointly and severally liable for the aforesaid payment; that the corporation was advised at that time that it could not purchase its own shares, which said advice was in error in that the Public Utilities Code of the State of California does prohibit a public utility from purchasing shares of another public utility, but does not contain any prohibition against the purchase of its own shares; that this error in advice led to an error in recording the transaction in the corporation's stock book and financial records; that the said erroneous recordation resulted in the corporation's said records showing all stock as being owned by GEORGE R. BEGGS and showing an account receivable from GEORGE R. BEGGS in the aforesaid amount; that this error on the records of the corporation should be corrected retroactively so as to cause the shares of this corporation's capital stock that came from the said T. F. Thompson to be received as treasury stock and so as to cause the cancellation of any account receivable from the said GEORGE R. *231 BEGGS arising from this erroneous recordation, which said correcting entries should be affected at a price and in a manner fairly carrying out the said agreement as of the date of its execution. After discussion it was, on motion duly made, seconded and unanimously carried, * * *
On April 12, 1955, 400 shares of the corporation's stock were transferred from petitioner to the corporation, to be received as treasury stock, pursuant to the resolution of December 17, 1954. Appropriate journal entries were made on the same date to reflect the transaction. The corporate income tax returns of the corporation showed the following amount of earned surplus on the dates indicated: December 31, 1954
$192,667.60
December 31, 1955
164,659.47
The corporation maintained an accounts receivable account to reflect funds received by petitioner for his own purposes. The corporation did not redeem 400 shares of petitioner's stock in 1954 or 1955. There was no real indebtedness running from petitioner to the corporation, and the cancellation of the account reflecting the purported indebtedness was not the distribution of a dividend. The question in issue is whether petitioner *232 received a taxable dividend in the amount of $40,000, and if so, whether in the year 1954, when the directors altered the corporate records to cancel the accounts receivable allegedly owing from petitioner and to retire 400 shares of stock, or in the year 1955, when the stock was actually delivered to the corporation. Respondent views the transaction of 1954 (or 1955) as the redemption of 400 shares of petitioner's stock. He further argues that the redemption falls within the terms of section 302(d), Internal Revenue Code of 1954, so that the distribution (cancellation of petitioner's indebtedness to the corporation) fits within the terms of section 301 and should be treated as a taxable dividend. See sections 316 and 301(c)(1). After an analysis of the stipulation of facts and testimony, we note that the salient facts are as follows: The partners agreed to dissolve the partnership in 1946. They agreed to transfer the assets to a corporation to be formed for the purpose. The March 1946 agreement was not a sale of the partnership assets to petitioner by Thompson but was merely an agreement to permit their transfer to a corporation. Petitioner purported to *233 transfer all the assets of the partnership and receive in return all of the stock of the corporation, held, except for qualifying shares, in his name. The transaction was cast in this manner because Thompson had been an employee of the Union Oil Company, a company with which the partnership had done, and the new corporation would continue to do, business, and it was deemed inadvisable to disclose Thompson's affiliations. Thompson had been a "silent partner." Petitioner, however, held 50 percent of the stock as nominee of Thompson and was supposed eventually to place the stock in Thompson's name as consideration for the partnership assets. Due to the desire to prevent the disclosure of the conflict of interest, the deterioration of relations between the parties, and the simple inaction on their part, Thompson was never made a shareholder of record. Some two years later Thompson demanded the stock which petitioner declined to transfer to him. The parties fell into dispute on how to settle Thompson's demands. Eventually, it was agreed that the corporation should pay Thompson $40,000 cash, petitioner to act as guarantor of payment, and that petitioner would transfer his interests *234 in a different partnership existing between petitioner and Thompson (Tri-State Oil Company), to Thompson. In reality, the corporation was purchasing Thompson's stock interest, at least to the extent of 400 shares. However, the corporation issued its checks to petitioner as trustee for the amount owing under the agreement, and petitioner, in turn, paid the money to Thompson. The redemption was effected via this circuitous route because it was erroneously believed by the parties that the corporation could not at that time purchase its own shares. Thus, it was made to appear that petitioner was purchasing the stock from money loaned to him by the orporation. However, petitioner was not in fact indebted to the corporation. The amounts given to petitioner for transmittal to Thompson were carried in a special "accounts receivable" from petitioner. A different account reflected the amounts petitioner received for his own use. It was subsequently learned that the corporation could purchase its own shares. Accordingly, the books were corrected to show that 400 shares were purchased from Thompson and were held as treasury stock. The accounts receivable was cancelled. In substance, *235 the corporation in 1948 redeemed the shares, at least to the extent of 400 shares, held by Thompson (or the shares he was entitled to receive), and petitioner was not really indebted to the corporation. Our analysis of the instant facts leads us to conclude that we must be guided by and achieve the same results as those obtained in Fox v. Harrison, 145 F. 2d 521 (C.A. 7). In that case the taxpayer had seemingly purchased stock which was later redeemed. The taxpayer was forced to buy the stock on behalf of the corporation because the banks would not lend the corporation a sufficient amount to redeem its principal shareholder, as was the original plan. The corporation was later able to change its reserves and set up a surplus. It issued its check to the taxpayer for the stock he was compelled to buy for the corporation, and the taxpayer paid off his loan. However, the Court of Appeals looked through form to get to the substance of the matter. It affirmed the District Court's finding that the corporation in reality redeemed the stock and the subsequent repayment of the purchase price to taxpayer was not a dividend. See Erickson v. United States, 189 F. Supp. 521 *236 (S.D. Ill.). Here, too, a devious path was adopted due to apparent necessity (the corporation allegedly could not purchase its own stock). When it was learned that the legal advice was erroneous and that the corporation could purchase its own shares, the books were altered to reflect the redemption of Thompson's stock and also to cancel the purported indebtedness. We believe, therefore, that the corporate minutes of December 17, 1954, correctly stated the transaction in saying that Thompson agreed to sell his assets and/or stock interest in the corporation to the corporation in 1948. Since the year 1948 is not before us we need not consider the problem of whether petitioner received a taxable distribution in that year by reason of the redemption of Thompson's stock. But cf. Holsey v. Commissioner, 258 F. 2d 865 (C.A. 3), and Niederkrome v. Commissioner, 266 F. 2d 238 (C.A. 9). We should comment that respondent built his case solely on his interpretation of the documentary evidence. To the extent he neglected to consider the testimony he was in error for we "may not arbitrarily ignore or discredit the testimony of unimpeached witnesses, so far as they *237 testify to facts." Boggs & Buhl v. Commissioner, 34 F. 2d 859, 860 (C.A. 3). We therefore considered both the testimony and the documents. We hold that petitioner did not purchase Thompson's share of the partnership assets in 1946; that the corporation did not in fact lend money to petitioner to purchase either Thompson's interest in the assets or stock in 1946 or 1948; that the corporation purchased Thompson's stock interests in 1948 to the extent of 400 shares; and that there was no redemption of 400 shares of stock in 1954 from petitioner and the cancellation of the purported indebtedness did not constitute a taxable dividend. Fox v. Harrison, supra; Erickson v. United States, 189 F. Supp. 521 (S.D.Ill.). Decisions will be entered for the petitioners.